WERTS, Appellee,

v.

PENN, Appellant.

[Cite as *Werts v. Penn,* 164 Ohio App.3d 505, 2005-Ohio-6532.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20922.

Decided Dec. 9, 2005.

506

James Werts, for appellee.

Ralph Penn, for appellant.

WOLFF, Judge.

{¶ 1} Ralph Penn appeals from a judgment of the Vandalia Municipal Court, Small Claims Division, which found in favor of James Werts on his legal-malpractice claim.

{¶ 2} The record reveals the following facts.

{¶ 3} In 2000, Werts contacted Penn, an attorney, to draft a land contract for the sale of Werts's rental property, located at 41 Locust Street, Dayton, Ohio 45405. According to Werts, during their meeting, Werts provided Penn with a

residential-property disclosure form, which showed the address and lot number of the rental property, and the land contract for his residence, located at 108 Poplar Street, Dayton, Ohio 45415, which he intended to be "more or less a form" for the Locust Street land contract. Penn did not recall seeing the residential-property disclosure form, and he testified that he returned the Poplar Street land contract to Werts because he does not use other attorneys' forms. Penn testified that he required his clients to provide the address, the parcel identification number, and the legal description of the property in order to draft a land contract. Penn stated that he informed Werts that he did "not research or look up the legal description on a land contract on a one shot deal with a client." Werts testified, however, that if he had had the legal description, he might have prepared the land contract himself.

{¶ 4} Penn prepared the land contract for Werts for $175. The legal description of the property was stated as: "Situated in the Township of Harrison, County of Montgomery in the State of Ohio, and being the west half of Lot No. 60 of Birdie I Crusey Subdivision, as recorded in Volume 'H', Page 18 of the Plat Records of Montgomery County, Ohio." In fact, this was the legal description for Werts's residence on Poplar Street, not the Locust Street property. The land contract further stated that the "property is also known as 41 Locust Dr., Dayton, Ohio 45429." However, the correct address was 41 Locust Street, Dayton, Ohio 45405.

{¶ 5} On July 5, 2000, Werts and his wife, as the sellers, and Joseph Tesmer, as the purchaser, signed the land contract. The contract was recorded on July 17, 2000. In August 2001, the Wertses sold the Locust Street property to Next Move Investments. Werts prepared a Release of Land Contract and recorded it. However, it was not signed by Tesmer, because he could not be located. The Wertses sold the Locust Street property to Next Move Investments without a release.

{¶ 6} In March 2004, Werts attempted to refinance the mortgage on his Poplar Street residence. At that time, he learned that the legal description in the land contract was that of his Poplar Street property and not that of 41 Locust Street. Werts attempted to contact Penn about the error. According to Werts, when he eventually spoke with Penn, Penn offered to file an action to quiet the title on his residence. In contrast, Penn testified that Werts had indicated that he would transfer Tesmer's signature onto a release and that Werts wanted Penn to notarize the release so that it could be recorded. Penn testified that he had refused to do so. Werts subsequently hired another attorney, Thomas Jacklitch, who for $2,500 successfully filed a quiet-title action regarding the Poplar Street property for Werts.

{¶ 7} On May 20, 2004, Werts filed suit against Penn, seeking damages of $3,000, arising out of Penn's alleged use of an incorrect legal description in the land contract. On October 26, 2004, a trial was held before a magistrate. The magistrate found that Penn had breached his duty to Werts and awarded damages to Werts in the amount of $2,500. Penn filed objections to the magistrate's decision. Upon review of the record, the trial court overruled the objections and adopted the magistrate's decision.

{¶ 8} Penn raises four assignments of error on appeal. We address Penn's assignments in an order that facilitates our analysis.

{¶ 9} II. "The lower court erred by failing to find that the one year statute of limitations for legal malpractice had expired prior to the filing of appellee's complaint."

{¶ 10} In his second assignment of error, Penn claims that the magistrate incorrectly found that Werts's claim had been brought within the statute of limitations.

{¶ 11} Under R.C. 2305.11(A), the statute of limitations for legal malpractice is one year. An action for legal malpractice accrues and the statute of limitations begins to run "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus. A "cognizable event" is an event that places a reasonable person on notice that a "questionable legal practice may have occurred" and the person might need to pursue remedies against his attorney. *Deutsch v. Keating, Muething & Klekamp, L.L.P.*, Montgomery App. No. 20121, 2005-Ohio-206, 2005 WL 119985, at ¶ 17; see *Chinese Merchants Assn. v. Chin*, 159 Ohio App.3d 292, 2004-Ohio-6424, 823 N.E.2d 900, at ¶ 7. The party asserting the statute-of-limitations defense has the burden of identifying the date of the cognizable event. *Case v. Landskroner & Phillips Co., L.P.A.* (May 3, 2001), Cuyahoga App. No. 78147, 2001 WL 470169.

{¶ 12} Penn asserts that the cognizable event occurred in August 2001, when Werts sold his Locust Street rental property to Next Move Investments. He states that a release was necessary in order to effectuate the sale of the Locust Street property and, thus, any defect in the land contract should have become apparent at that time.

{¶ 13} We disagree. Although Werts may have required a release of the land contract in order to remove any cloud on the Locust Street property, the need for

such a release would not have reasonably placed Werts on notice that there was an error in the land contract. The need for the release in 2001 was not due to an error in the land contract; rather, it was due to the existence of the land contract. Thus, the trial court properly concluded that a cognizable event did not occur until March 2004, at which time Werts learned that there was a cloud on the Poplar Street property's title due to the incorrect legal description in the Locust Street land contract. At that juncture, Werts was placed on notice that there might be an error in the land contract and that he might need to pursue remedies against Penn. Accordingly, Werts's legal-malpractice claim, filed in May 2004, was timely.

{¶ 14} The second assignment of error is overruled.

{¶ 15} III. "The lower court erred in finding that appellee incurred damages that were directly and proximately caused by a breach of any duty of appellant to appellee."

{¶ 16} In his third assignment of error, Penn claims that the magistrate erred in concluding that Werts's quiet-title action was directly and proximately caused by the errors in the land contract.

{¶ 17} In order to prevail on his legal-malpractice claim, Werts was required to demonstrate (1) that the attorney owed him a duty or obligation, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there was a causal connection between the conduct complained of and the resulting damage or loss. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164.

{¶ 18} Penn asserts that the errors in the land contract did not necessitate the quiet-title action. Rather, he argues, Werts was required to file a quiet-title action, as opposed to obtaining a release of the land contract, because Tesmer had left the jurisdiction and could not be located. Penn states: "In other words, regardless of whether the legal description was correct or not, the Appellee would still have had to file a Quiet Title Action and incure [sic] legal expenses of $2,500.00 because the legal rights of the Vendee had to be adjudicated under the land contract."

{¶ 19} We disagree. The record clearly demonstrates that Werts's residential property was inadvertently encumbered as a result of the land contract drafted by Penn. Although Werts could have attempted to remove that encumbrance by obtaining a release of the land contract from Tesmer, Werts was unable to do so because Tesmer had left the jurisdiction. Consequently, Werts was required to file a quiet-title action to remove the cloud from the title on his Poplar Street property. Had the legal description on the land contract been correct, Werts would not have had to file an action regarding his residential property. Accord-

ingly, the magistrate did not err in concluding that the alleged negligent drafting of the land contract proximately caused Werts's filing of the quiet-title action, for which he paid $2,500 in attorney fees.

{¶ 20} The third assignment of error is overruled.

{¶ 21} IV. "The lower court erred by misconstruing evidence and incorrectly assessing that evidence against the appellant, thereby resulting in a judgment for appellee."

{¶ 22} In his fourth assignment of error, Penn claims that the magistrate made several erroneous findings.

{¶ 23} First, Penn challenges the magistrate's findings that he could have easily confirmed the description of the Locust Street property through his computer. Specifically, the magistrate found:

{¶ 24} "11. The Court finds as a matter of fact, the Defendant had access to his computer which identifies the correct property, zip code and description as well as access to his client, Landmark Title's computers.

{¶ 25} " * * *

{¶ 26} "2. * * * The Court finds as a matter of law, the Defendant had a legal duty to confirm the description, easily through his computer base which the Defendant described in the record and was not required to visit the courthouse to determine the correct or incorrect address of the subject property. The Court finds as a matter of law, the excuse that a secretary typed the wrong address is not satisfactory and does not absolve the Defendant of liability or responsibility for his negligence."

{¶ 27} Penn claims that there was no evidence that he had access to computers that would have provided such information. He states that his exhibits were copies of microfiche indexes that are on five-by-seven plastic cards and are not computer database information. Penn also notes that he testified that it would be time consuming to use these indexes, especially if the client had several properties. Penn had acknowledged, however, that if Werts's property had been researched, it would have been easy to ascertain the legal description, the parcel identification number, and the street address.

{¶ 28} During his testimony, Penn described what he would have had to do if he had looked up the legal description for Werts's Locust Street property. Penn indicated that Landmark Title Company, a client, kept an index on microfiche cards regarding properties, to which he had access. These cards provided the owner's name, owner's mailing address, street address of the property, parcel number, legal description, city/township of the property, tax district, and other information about the property. Penn stated that, after obtaining this informa-

tion, he would go to the Montgomery County Ohio Deed Index, which is also maintained on microfiche cards by Landmark, and would find the properties, deed descriptions, and the microfiche number of where the deeds were kept. Penn would then obtain the deeds from the deed microfiche. Penn summarized: "[I]f I had gone and searched it, it would have been simple to find out all three * * * of these items [i.e., the address, parcel I.D. and legal description] and to put it correctly on * * * the land contract."

{¶ 29} Upon review of the evidence, it is apparent that the magistrate misinterpreted the evidence when he found that Penn had access to computers rather than to microfiche. However, this mistake has little import. The crux of the finding was that Penn had ready access to property data "which the Defendant described in the record" and that he did not need to go to the courthouse to determine the correct legal description of the property. This finding was supported by the record. In addition, although Penn testified generally that verifying property descriptions would be time-consuming if the client had multiple properties, he acknowledged that it would have been easy to obtain the correct legal descriptions once the microfiche had been searched. We find no reversible error in the trial court's findings.

{¶ 30} Next, Penn challenges the magistrate's factual findings (1) that Penn knew or should have known the zip code for the city of Kettering and that Penn testified that he knew that zip code and (2) that Penn testified that his secretary may have typed the wrong address for the property but that he is responsible for his secretary's actions. Penn further challenges the magistrate's finding of law that he "should have known, even with a cursory look at the Land Contract he drafted for the Plaintiff, recognized and known the zip code of the City of Kettering was not Harrison Township, Ohio."

{¶ 31} We find no fault with the contested factual findings. Upon questioning by the magistrate, Penn testified that he knew that the 45429 zip code was in Kettering. In addition, he acknowledged that, "with respect to the address on the property, I do not type up these land contracts myself. * * * It may be something my secretary did even after the contract was prepared * * *." Penn agreed that he was responsible for the actions of his secretary. Accordingly, the magistrate's findings are based directly on Penn's testimony at trial.

{¶ 32} We likewise find no fault with the magistrate's conclusion that, in light of the facts that Penn knew that 45429 represented a Kettering address and that the Locust Street property was not in Kettering, Penn should have known that the zip code on the land contract was faulty.

{¶ 33} Finally, Penn claims that the trial court did not take into account his testimony that the land contract was prepared from information furnished to

him by Werts. He emphasizes that he had not previously seen the residential-property disclosure form, which showed the address and lot number of the Locust Street property. Penn argues that Werts also did not know the correct zip code for his property, citing the magistrate's finding that Werts "testified that he was the owner of a second property located at 41 Locust Street, Dayton, Ohio 45429."

{¶ 34} In asserting that the trial court did not take into account his testimony, Penn cites paragraph four of the findings of fact, which states: "The Plaintiff testified that upon his initial conference, he presented the Defendant with Exhibit '1' identifying the street address and lot number of the subject property for the Land Contract along with a Land Installment Contract known as Exhibit '2' which was a sample of a Land Contract he wished to use as a form." Upon review of the record, it is apparent that paragraph four merely repeated Werts's testimony as to that initial meeting. In other findings, the magistrate noted that Penn had testified that he had returned Exhibit 2 to Werts and that Penn had routinely relied solely upon the client's description of the property when preparing land contracts.

{¶ 35} As for the magistrate's statement of Werts's testimony regarding the street address, we note that the trial court's use of 45429 as the zip code was apparently a typographical error by the court. Werts testified that the residential property disclosure form listed the zip code as 45405, and that 45429, which was used on the land contract, was erroneous. The parties do not dispute that the property was not located in the city of Kettering. Parenthetically, we also note that the magistrate indicated that the Locust Street property was located in Harrison Township, rather than in Kettering. Although it is undisputed that the property was not located in Kettering, Penn's microfiche evidence indicates that the Locust Street property was located in the city of Dayton, not in Harrison Township. (The Poplar Street property was located in Harrison Township.) Upon review of the record, we find these factual errors to be inconsequential to the issues before us.

{¶ 36} The fourth assignment of error is overruled.

{¶ 37} I. "The lower court erred in finding that appellant committed legal malpractice when no evidence was presented to create a standard of care to establish that appellant breached any duty to the appellee."

{¶ 38} In his first assignment of error, Penn asserts that Werts did not provide evidence of the standard of care required of Penn and that there was no evidence that he failed to meet the required standard of care. Penn further contends that the trial court improperly considered the factual findings of the court in *Werts v. Tesmer*, Montgomery Case No. 04–CV–2748 ("*Tesmer*"), the quiet-title action, in establishing the breach of the standard of care.

{¶ 39} In general, expert testimony is required in order to establish the professional standard of performance. *McInnis v. Hyatt Legal Clinics* (1984), 10 Ohio St.3d 112, 113, 10 OBR 437, 461 N.E.2d 1295; *Roselle v. Nims,* Franklin App. No. 02AP–423, 2003-Ohio-630, 2003 WL 283160, ¶ 25; *Bloom v. Dieckmann* (1983), 11 Ohio App.3d 202, 203, 11 OBR 298, 464 N.E.2d 187. Expert testimony is not required, however, "when the breach of duty is within the common understanding of lay persons or is so obvious that it may be determined as a matter of law." *Roselle* at ¶ 25; *McInnis,* 10 Ohio St.3d at 113, 10 OBR 437, 461 N.E.2d 1295.

{¶ 40} In this assignment of error, Penn challenges the following findings by the magistrate, arguing that they improperly state the standard of care:

{¶ 41} "10. The Court finds as a matter of fact, the Defendant, as an attorney, did not notify the Plaintiff in writing, that the attorney was relying totally upon the Plaintiff as to the correct street address, the description and zip code. The Defendant argued to do anything other than that would raise the cost of the fees of more than $175.00 and that he, routinely in the practice of law preparing Land Contracts for individual clients, had relied upon solely the client's description of the property presented.

{¶ 42} " * * *

{¶ 43} "13. The Plaintiff introduced Exhibit '7' without objection from the Defendant. Exhibit '7' identifies in the cover letter dated March 19, 2004, a Quiet Title lawsuit must be instituted to clear the title to the real estate in question which has been 'clouded by recorded land installment contract that was incorrectly prepared. * * * [T]he legal description for the intended 41 Locust Drive was incorrectly described as 108 Poplar.' The total fee identified for these services was $2,500.00 for which the Plaintiff testified he paid said sum in full. There was no objection as to the evidence of attorney fees as not being reasonable and/or necessary."

{¶ 44} Although we agree with Penn that the magistrate implied that written notification was required, we see nothing improper with the findings in paragraph ten. As an initial matter, the trial court did not find, as a matter of law, that the failure to notify Werts in writing violated a professional standard of care. Moreover, upon review of the record, it is clear that paragraph ten accurately reflects Penn's testimony, upon questioning by the magistrate, that he did not notify Werts in writing that he (Penn) would rely solely on Werts's documents regarding the Locust Street property to prepare the land contract and that researching the property descriptions was economically impracticable.

{¶ 45} As for paragraph 13, Penn appears to challenge the implication that the land contract was incorrectly prepared by him. Although inartfully

stated, it appears that Penn also challenges the magistrate's subsequent finding that he had a duty to confirm the property descriptions in the land contract. He asserts that there was no testimony as to what the cover letter stated and that the letter did not address how the incorrect legal description was obtained. Penn further claims that the magistrate's findings incorrectly relied on the default judgment to establish a violation of the standard of care for this action. He states: "[T]here was no testimony whatsoever as to the Judgement Entry, the action was completely uncontested, Appellant was not a party to the action, and that action based on information furnished by [Werts] does not by assumption, [*per*] *se*, establish a standard of care for Appellant for purposes of this action."

{¶ 46} The magistrate found, as a matter of law, that Werts's Exhibit 7—which included a cover letter from Jacklitch to Werts, the complaint in the quiet-title action, and the default judgment—"provide[d] the facts of a breach for the standard of care along with the judicial finding of the Court of Common Pleas of Montgomery County, Ohio." The default judgment stated that "through an error by an attorney's clerical staff, the legal description on the Land Contract used for '41 Locust Street, Dayton, Ohio 45429' was the legal description for their personal residence at 108 Poplar Street, Dayton, Ohio 45419." The magistrate stated that Werts's and Penn's testimony confirmed these facts. The magistrate presumably was referring to Penn's testimony that "with respect to the address on the property, I do not type up these land contracts myself. I'm not sure at what point in time that was actually added into the land contract. It may be something my secretary did even after the contract was prepared except for the * * * address so that might be one of the reasons why I wouldn't have known or wouldn't have caught that * * * as an issue." The magistrate found that Penn should have known, "even with a cursory look at the Land Contract he drafted" for Werts, that there were errors in describing the property, such as the incorrect zip code and the use of "Drive" rather than "Street." In its findings of law, the magistrate concluded that Penn "had a legal duty to confirm the description" of the Locust Street property, which he could have done without visiting a courthouse.

{¶ 47} We agree with Penn that the trial court improperly applied the factual findings in the quiet-title action to Penn. In general, it is inappropriate for a trial court to take judicial notice of testimony from unrelated proceedings. *State v. Stritch*, Montgomery App. No. 20759, 2005-Ohio-1376, 2005 WL 678938, ¶ 14. Moreover, to give preclusive effect to an issue determined in earlier litigation, there must be mutuality of parties. *Hines v. Kline Engineering* (July 2, 1998), Greene App. No. 97–CA–123, 1998 WL 350592. Here, no testimony was provided in *Tesmer* as to the cause of the incorrect legal description in the land contract; the trial court in that case merely reiterated that factual allegation in

the complaint and incorporated it into the default judgment. Penn was not a party to that action, nor is there any evidence that he was in privity with Tesmer. Accordingly, the magistrate should not have relied upon the factual finding in the default judgment that the faulty legal description was due to a clerical error by Penn's secretary.

{¶ 48} As for the duty to confirm the legal description, we likewise agree with Penn that the magistrate could not have found, as a matter of law, that Penn had violated the standard of care based on the evidence presented. If, as Penn testified, Werts provided the property descriptions to Penn and Penn made clear to Werts that he would use the property descriptions provided to him in order to complete the land contract, then it is unclear whether Penn violated any duty of care. In other words, if Werts had agreed that Penn would merely insert the land descriptions provided by Werts into a standard land contract, it is not obvious that Penn had breached any duty of care to Werts if the descriptions were incorrect.

{¶ 49} Although the magistrate could have considered the alleged breach to be obvious if Penn had used the Poplar Street legal description by mistake, there was little evidence to support that conclusion. Werts merely indicated that he had provided the correct street address and lot number of the Locust Street property to Penn, Penn denied looking up the legal description of the property, and the evidence is unclear, at best, as to the source of the erroneous legal description in the land contract that Penn prepared for Werts. The magistrate could have made a factual finding regarding the source of the legal description used in the land contract, but did not do so. Although the many errors in the land contract may lead to an instinctive reaction that negligence was the cause, we do not conclude that this case presented a circumstance where the breach was so obvious that it may be determined as a matter of law.

{¶ 50} In sum, we conclude that Werts was required to present expert testimony concerning the standard of care required of Penn in order for the magistrate to have determined whether Penn had a duty to confirm the property descriptions. Because Werts did not provide such evidence, the trial court erred in finding a breach of the standard of care.

{¶ 51} The first assignment of error is sustained.

{¶ 52} The judgment of the trial court is reversed.

Judgment reversed.

FAIN and DONOVAN, JJ., concur.