[Cite as *Powell v. Rion*, 2012-Ohio-2665.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

CHARLES POWELL                    :

      Plaintiff-Appellant          :          C.A. CASE NO.    24756

v.                                :          T.C. NO.    10CV7982

JOHN H. RION, ESQ., et al.        :          (Civil appeal from
                                                     Common Pleas Court)
      Defendants-Appellees         :

                                  :

. . . . . . . . . .

# O P I N I O N

Rendered on the ____15th____ day of ____June____, 2012.

. . . . . . . . . .

BRIAN M. GARVINE, Atty. Reg. No. 0068422, 5 East Long Street, Suite 1100, Columbus, Ohio 43215
      Attorney for Plaintiff-Appellant

TIMOTHY T. REID, Atty. Reg. No. 0007272 and MEGHAN B. KILBANE, Atty. Reg. No. 0085629, 55 Public Square, Suite 2150, Cleveland, Ohio 44113
      Attorneys for Defendants-Appellees

. . . . . . . . . .

FROELICH, J.

{¶ 1}    Plaintiff-appellant Charles Powell appeals from a summary judgment rendered against him, on statute of limitations grounds, on his legal malpractice complaint against defendants-appellees John H. Rion, Nicole Rutter-Hirth, Keri Farley, Matthew Barbato, and

Rion, Rion & Rion, LPA, Inc. For the following reasons, the trial court's judgment will be reversed and the matter will be remanded for further proceedings.

I. The Litigation Underlying the Malpractice Claim

{¶ 2}     In 2007, Powell was charged in the Fairborn Municipal Court with obstructing official business, criminal trespass, and voyeurism. On the day set for trial in 2008, Powell, who was represented by the Rion firm, pled guilty to voyeurism, and the other charges were dismissed. The circumstances surrounding the plea are set forth in some detail in *State v. Powell*, 188 Ohio App.3d 232, 2010-Ohio-3247, 935 N.E.2d 85 (2d Dist.), in which we reversed an order of the trial court overruling Powell's motion to withdraw his plea, vacated the plea, and remanded the cause for further proceedings. At paragraph 58 of that opinion, we concluded:

> Having thoroughly reviewed the record, we conclude that a manifest injustice is shown. Powell testified that this was his first conviction, and the victim herein was not a minor. Powell received ineffective assistance of counsel in that he was not advised that voyeurism was a registration-exempt sexually oriented offense, absent a separate order by the court removing the presumptive exemption. Further, the record is unrebutted that counsel for Powell, who was ill-prepared, misled Powell by advising him that the registration was subject to expungement within a brief period. Finally, the trial court erred in designating Powell a Tier I sex offender subject to registration without first complying with R.C. 2950.021. Accordingly, prejudice is demonstrated. Powell's plea is hereby vacated, and the matter is remanded for proceedings consistent with this opinion.

## II. The Malpractice Claim

**{¶ 3}** Powell initially brought this legal malpractice action against the individual defendants on September 29, 2009, but later dismissed it without prejudice. He re-filed on October 6, 2010. Later, in an amended complaint, he included the Rion, Rion & Rion law firm, within which all of the individual defendants practiced law, as a defendant.

**{¶ 4}** The essence of Powell's amended complaint is set forth in paragraphs 9-10 and 13-15 thereof, as follows:

9. Defendants' conduct fell below the standard of care of a competent lawyer practicing criminal law in the State of Ohio including, but not limited to, Defendants' failure to indicate to the Court in the Prior Litigation that Powell's plea to voyeurism did not require registration on the Sex Offender Registry; failure to properly advise Powell with respect to the consequences of entering a guilty plea to voyeurism (Defendants wrongly advised Powell that a guilty plea to voyeurism required Powell to register on the Sex Offender Registry, which in fact, was not true); incorrectly advising Powell that entering a guilty plea to voyeurism would result in a requirement to file with the Sex Offender Registry for a period of one year; and a general failure to competently represent Powell.

10. As a direct and proximate result of Defendants' negligence and malpractice, among other results, Powell pled guilty to voyeurism in the Prior Litigation and was wrongly placed on the Sex Offender Registry, which resulted in, among other results, Powell being discharged from the United States Air Force.

* * *

13. At all times relevant, Defendants had a duty to act in accordance with the standard of care to which attorneys are held, including attorneys practicing in the area of criminal law litigation.

14. Defendants' acts and/or omissions committed while representing Plaintiff fell well below the standard of care in the legal profession.

15. As a direct and proximate result of these acts of malpractice, Plaintiff pled guilty to voyeurism in the Prior Litigation and was wrongfully placed on the Sexual Offender Registry resulting in, among other results, his discharge from the United States Air Force, inability to obtain gainful employment as well as public humiliation. Accordingly, Plaintiff has been damaged in an amount to be determined at trial * * *.

### III. Summary Judgment

{¶ 5} The defendants moved for summary judgment, based upon the statute of limitations. They supported their motion with a transcript of Powell's deposition. Following a telephone hearing on the motion, the trial court granted the motion, without explanation, and rendered summary judgment for the defendants.

{¶ 6} When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no

genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119-20, 413 N.E.2d 1187 (1980). Therefore, the trial court's decision is not granted deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993). Similarly, the determination of the date a cause of action for legal malpractice accrues is a question of law reviewed de novo by an appellate court. *Cicchini v. Streza*, 160 Ohio App.3d 189, 2005-Ohio-1492, 826 N.E.2d 379, ¶ 17 (5th Dist.), citing *Whitaker v. Kear*, 123 Ohio App.3d 413, 420, 704 N.E.2d 317 (4th Dist.1997).

{¶ 7} Powell appeals from the grant of summary judgment against him. His sole assignment of error is as follows:

THE TRIAL COURT ERRED WHEN IT DETERMINED THAT APPELLANT'S COMPLAINT WAS FILED OUTSIDE THE STATUTE OF LIMITATIONS FOR LEGAL MALPRACTICE CLAIMS.

{¶ 8} R.C. 2305.11(A) states, "An action for * * * malpractice * * * shall be commenced within one year after the cause of action accrued * * *." "[A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." (Citation omitted.) *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 58, 538 N.E.2d 398 (1989). "The party asserting the

statute-of-limitations defense has the burden of identifying the date of the 'cognizable event.'" (Citations omitted). *Werts v. Penn*, 164 Ohio App.3d 505, 2005-Ohio-6532, 842 N.E.2d 1102, ¶ 11 (2d Dist.). The parties agree that the attorney-client relationship in this case ended on June 9, 2008, which is more than one year before September 29, 2009, when Powell filed his original complaint. Consequently, the issue is whether there is a genuine issue of material fact whether a cognizable event occurred more than one year before September 29, 2009.

{¶ 9}  When determining the accrual date of R.C. 2305.11(A) in a legal malpractice action, the trial court must "explore the particular facts of the action" and make several determinations. *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 388, 528 N.E.2d 941 (1988). Specifically, the court must determine (1) "when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem," (2) "whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him or her," and (3) "whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury." *Id.*

{¶ 10}  The defendants contend that the cognizable event occurred, at the latest, on June 13, 2008 (more than one year before his complaint), when Powell sent a letter to the Dayton Bar Association concerning the defendants' representation of him. Powell contends that a cognizable event did not occur until March 2009 (less than one year before his complaint), when he consulted attorneys to see about having his voyeurism conviction expunged, and discovered (1) from the attorneys he consulted, that he could not get his voyeurism conviction expunged until after his 15-year sex offender registration requirements expired, and (2) from his own

research, that he should never have been classified as a sex offender in the first place.

{¶ 11} The concept of a cognizable event was discussed in the context of a medical malpractice cause of action in *Allenius v. Thomas*, 42 Ohio St.3d 131, 133-134, 538 N.E.2d 93 (1989):

* * * Since the three prongs of *Hershberger*[, *infra*,] overlap considerably, we believe that the best manner in which to explain "extent and seriousness of his condition" is to combine the three prongs. Thus, we now hold that the "extent and seriousness of his condition" language of the test set forth in *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, paragraph one of the syllabus, requires that there be an occurrence of a "cognizable event" which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies.

Moreover, we do not believe that a patient must be aware of the full extent of the injury before there is a cognizable event. It is enough that some noteworthy event, the "cognizable event," [footnote omitted] has occurred which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place.

If a patient believes, because of harm she has suffered, that her treating medical professional has done something wrong, such a fact is sufficient to alert a plaintiff " ' * * * to the necessity for investigation and pursuit of her remedies. * *

*' " *Graham v. Hansen*, 128 Cal.App.3d 965, 973, 180 Cal.Rptr. 604, 609 (1982).

**{¶ 12}** The cognizable event concept was applied to legal malpractice in *Zimmie*, where the Supreme Court of Ohio held that in legal malpractice, as with medical malpractice, the injured person need not be aware of the full extent of an injury before there is a cognizable event. *Zimmie*, 43 Ohio St.3d at 58. Specifically, the court held, "In this case, the trial court's invalidation of the antenuptial agreement was a cognizable event *which should have alerted a reasonable person that a questionable legal practice may have occurred*." (Emphasis added). *Id.* Similarly, we have held that "[t]he discovery rule contemplates notice of an injury to the client's legal interests, not the particular breach of the attorney's duty of care that proximately caused the injury." *Collett v. Steigerwald*, 2d Dist. Montgomery No. 22028, 2007-Ohio-6261, ¶ 27.

**{¶ 13}** Powell filed a grievance with the Bar Association against the defendants on June 13, 2008. In that grievance, Powell complained that, among other things:

1. I am writing this grievance on the law firm Rion, Rion, Rion, LPA, Inc. concerning their unprofessional and unethical standards. I will provide detailed information about how terribly this law firm freaked me throughout my case the past year.

* * *

4. After the courts received my evaluation, my trial was set for June 9, 2008. The trial was supposed to start at 9:45 am; however, my attorney (Mr. Matthew Barbato) was late. When he finally showed up, we talked for about two

minutes. He was not that familiar with my case and I even asked about paperwork that was in my file that he didn't even know about. I always thought an attorney should be prepared and know every aspect of a client's case so they can give the best information and make the best judgment. After we talked, Mr. Barbato then went to talk to the district attorney. He talked with her for about a minute before coming back and telling me the district attorney would make a deal for me to plead guilty to voyeurism and drop the other two charges. Before the trial, Nicole Rutter-Hirth said the original deal for me to enter a plea to the criminal trespassing and obstruction should still be valid, but there was no mention of this. I did not know what was good or not and I asked Mr. Barbato what would the consequences be if I elected this route. He said I probably would not get jail time if I made this decision. That was the only relevant information I had and I did not want to go to court because I did not feel comfortable with him as my attorney. I put in my plea of guilty to voyeurism and I thought that was it. The judge finally informed me that I would have to register as a sexual offender due to my charge. That was the first time I have ever heard about the sexual offender list. My attorney's [sic] have been working this case for the past year and none of them has ever told me not even once that I will need to register on the list if convicted. I feel like Rion, Rion, Rion failed me because I did not receive important information that I feel as a client was extremely important.

5. Throughout the past year, my attorney's [sic] at Rion, Rion, Rion have made numerous horrendous decisions that could have jeopardized my case. I

have identified some of the unethical and unprofessional standards this law firm presented and that is not all. I am requesting an investigation for this firm and would like my case reopened if possible. I do not want a record that could have been different if my attorney's [sic] were professional and competent. * * *

{¶ 14} At his deposition, Powell characterized his grievance to the Dayton Bar Association as "[p]retty much just the way they handled my case." He was asked, "You knew June 13, 2008 that you felt there had been some falling below the standard of care?" To which Powell responded: "Well, I mean, yes. Showing up late for my hearing, right. Everything during that time was unethical and unprofessional. Right." Powell emphasized that his grievance was directed to alleged unethical conduct, not to malpractice. For example, when asked, "So you didn't contend [in the grievance] that it was malpractice, that the attorneys were telling you different things?" Powell responded, "Well, that's ethical conduct, not malpractice."

{¶ 15} In his deposition, Powell again singled out the sex offender registration consequence: "Pretty much stated that the first time I heard about the sex offender registration was the actual hearing date." When asked whether his grievance complained about having to register, Powell clarified, "Well, I wasn't complaining about the sex offender itself. I was complaining because I didn't know beforehand."[1]

{¶ 16} The dissent makes a strong argument that Powell, at the time of the plea and certainly when he wrote to the DBA, was upset with his attorneys and that he would have to

---

[1] As discussed, infra, we agree with Powell that unethical conduct and legal malpractice are not synonymous terms and that it is possible for one to occur without the other. Whether or not this carries any evidentiary weight, we note that the Dayton Bar Association's response to Powell's grievance indicated that the DBA had apparently perceived the grievance to be for violations of the Rules of Professional Conduct; the response did not mention legal malpractice.

register as a sexual offender; therefore, he should have known that a "questionable legal practice may have occurred." However, the question, to which there must be no genuine issue of material fact, is: When did something happen (i.e., a cognizable event) that did or should have lead the client to believe that the situation of which the client now complains is related to legal advice previously given to the client and did or should that cognizable event have placed the client on notice of the need to pursue possible remedies?

{¶ 17} In June 2008, Powell was dissatisfied with the manner in which defendants handled his case, but he was not yet aware that defendants' representation of him detrimentally affected the outcome of his case. He did not yet know, for example, that being a registered sex offender would make it impossible for him to remain in, or to rejoin, the Air Force; he did not yet know that he would not be able to have his conviction expunged as soon as he had completed the community control sanctions, but would have to wait until his 15-year sex offender registration requirements were over; and he did not yet know that if his case had been handled competently, he might not have been subject to sex offender registration requirements at all, since voyeurism was, at the time Powell committed his offense, presumptively exempt from sex offender classification unless the trial court expressly determined otherwise. *State v. Powell*, 188 Ohio App.3d 232, 2010-Ohio-3247, 935 N.E.2d 85, ¶ 48-58 (2d Dist.). Also, although Powell was aware, by the time he filed his grievance with the Dayton Bar Association, that Rion, Rion, and Rion had "made numerous horrendous decisions that *could have* jeopardized my case," he points out that he was not then aware that the offense to which he had pled guilty – voyeurism – was presumptively exempt from sexual offender classification, which his attorney should have pointed out to the trial court and that it could not be expunged. (Emphasis added.)

{¶ 18}   While it is true that the client need not be aware of the full extent of the injury resulting from the event, it must be enough to alert a reasonable client that he or she relied to their detriment on the legal advice.  It is not sufficient that the client be dissatisfied with the advice or its result, but rather that the harm be of such a nature and degree that the reasonable person client would be alerted that the harm was the result of something that his or her attorney did legally wrong.

{¶ 19}   In the underlying criminal case, we held that Powell should have been advised by his lawyers that voyeurism was registration-exempt and not subject to expungement.  His letter to the Dayton Bar Association complained of neither of these, because he had no way of knowing of the error of such lack of advice until he was released from supervision and sought to remove his sexual offender classification.

{¶ 20}   This is perhaps analogous to a surgery patient who is ignored or treated callously by his or her physicians and sustains an unexpected infection and pain; and while the patient is dissatisfied with the result and may even file a complaint with the hospital about the interactions with the doctors, he or she has no reason to believe the infection was the result of medical negligence – perhaps until years later when, for example, another physician finds an instrument left in the surgery site.

{¶ 21}   A "reasonable client," no more than a "reasonable patient," is not alerted to questionable legal or medical practice merely by an injury or bad outcome.  It is difficult to guess whether such a holding would multiply malpractice litigation (for fear of missing the statute) or reduce it (because the legal or medical negligence is not discovered until after the statute); neither one of these is contemplated by the statutes or case law dealing with statutes of

limitation.

**{¶ 22}** Similarly, the cognizable event cannot be determined solely by a layperson's answer to a deposition question invoking "standard of care," an angry letter to a disciplinary entity, or similar legalistic standards seemingly often applied with the perspective of hindsight.

**{¶ 23}** Powell also argues that he reasonably relied upon the Dayton Bar Association's response to his grievance. Essentially, he argues that even if the Dayton Bar Association letter were the cognizable event, that cognizable event was dissipated by virtue of the Dayton Bar Association's response to his grievance. In other words, Powell argues that statute of limitations should be tolled for the period of time between the Dayton Bar Association's response to the his grievance and his March 2009 meeting with new counsel regarding expungement and the removal of his sex offender classification. We disagree with Powell's contention.

**{¶ 24}** The Dayton Bar Association's response to Powell's grievance concluded as follows:

The investigator in this case has met with the attorneys involved from the Rion Rion & Rion firm. After discussing the issues at length, the investigator reported that the firm could have done a better job of advising you of registration requirements which apparently went into effect on January 1, 2008. However; Mr. Barbato did stop the plea hearing and explained the registration requirement to you before you decided to go on with the plea. Also, the prosecutor's refusal to hone [honor?] an earlier plea offer was based on the new registration requirement.

Inasmuch as the investigation revealed no breach of professional conduct

(under the Code of Professional Responsibility of the Supreme Court of Ohio) that would warrant formal disciplinary action against the firm, the Committee is taking no further action at this time.

Pursuant to Rule V(4)(I)(5) of the Ohio Supreme Court Rules for the Government of the Bar, you may secure a review of our determination by filing a written request with the Secretary of the Board of Commissioners on Grievances and Discipline of the Bar within fourteen (14) days of your receipt of this letter. You may write to the Secretary of the Board at the following address: * * * .

**{¶ 25}** Powell did not pursue the matter further.

**{¶ 26}** To begin with, not every violation of the ethical rules contained in the Rules of Professional Conduct constitutes legal malpractice, and not every act of legal malpractice constitutes a violation of ethical rules requiring discipline. *See DeMeo v. Provident Bank*, 8th Dist. Cuyahoga No. 89442, 2008-Ohio-2936, ¶ 44-45. Therefore, the fact that the Dayton Bar Association found no breach of the ethical rules for attorneys that would warrant formal disciplinary action is not the equivalent of finding that the defendants had not committed actionable legal malpractice, since those are not necessarily the same thing.

**{¶ 27}** Furthermore, we are not aware of any authority for the proposition that a cognizable event, once it occurs, can be dissipated as a result of the malpractice victim's inquiry – or, to put it another way, that the statute of limitations for professional malpractice, having begun to run as a result of the occurrence of a cognizable event, is tolled because the malpractice victim's inquiry results in the victim's conclusion that malpractice did not occur. We find nothing in *Allenius v. Thomas* to suggest that the statute of limitations, having started to run upon

the occurrence of a cognizable event, is tolled when the malpractice victim, having conducted inquiry, concludes that no malpractice occurred. The malpractice victim may, of course, retain experts to assist in conducting an inquiry and reaching a conclusion, and those experts may themselves incur liability to the victim for a breach of their professional duties. But the statute of limitations upon the original act of malpractice begins to run upon the occurrence of the cognizable event. The malpractice victim must pursue his remedies in timely fashion, or abandon them at his peril.

{¶ 28} Regardless, Powell was upset with what he perceived to be the "unprofessional and unethical standards" of the lawyers that represented him; among other things, he believed they should have told him, before the day of the plea, that he would have to register as a sexual offender. It was not simply that Powell was not aware of the full extent of his injury, but there is a genuine issue as to whether he was or should have been aware that any injury he did sustain was the result of faulty legal advice as opposed to bad communication by his lawyers and an unfortunate, but unavoidable, outcome of his criminal charges.

{¶ 29} Powell's sole assignment of error is sustained.

IV. Conclusion

{¶ 30} The court found that there was no genuine issue of material fact and that the statute of limitations had run prior to the filing of Powell's malpractice complaint on September 29, 2009. We disagree.

{¶ 31} Powell's sole assignment of error having been sustained, the judgment of the trial court will be reversed and the case will be remanded for further proceedings.

. . . . . . . . . .

DONOVAN, J., concurs.

FAIN, J., dissenting:

{¶ 32}    Although I am sympathetic to Powell's plight (if his allegations are true, he was poorly served by his trial counsel), I would hold that there is no genuine issue of material fact on the statute-of-limitations issue, and affirm.

{¶ 33}    In his grievance letter to the Dayton Bar Association, Powell cited an offer made at the first hearing, on September 10, 2008, to dismiss the Voyeurism charge in exchange for his plea to Criminal Trespassing and Obstruction of Justice.   He decided to take up his attorney's suggestion that he pursue the mental health approach, rather than to take the offered deal at that time.   According to paragraph 2 of his grievance letter: "She never once said this deal might not be offered at a later time. * * * Nothing else was explained to me[,] nor did she say this would be the only time this offer would be available."

{¶ 34}    Thus, Powell asserted, in his September 10, 2008 grievance letter, that he could have accepted the State's offer, and could have avoided classification as a sex offender, had his attorney told him that the deal might not be offered later.   In other words, he was aware, at that time, of a direct causal relationship between his attorney's "questionable practice" of not advising him that the deal might not be available later, and the adverse consequence of his classification as a sex offender.

{¶ 35}    As I understand *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 57, 538 N.E.2d 398 (1989), Powell's awareness of a causal relationship between the adverse result and a questionable legal practice was a cognizable event that triggered the running of the statute

of limitations for legal malpractice. The fact that there was an additional act of legal malpractice – not recognizing that a Voyeurism conviction is presumptively exempt from registration requirements – is of no consequence. The cognizable event of which Powell was aware imposed upon him the duty of pursuing his possible remedies, which would have revealed a theory of legal malpractice in addition to the theory of which he was already aware.

**{¶ 36}** I would affirm.

. . . . . . . . . . .

Copies mailed to:

Brian M. Garvine
Timothy T. Reid
Meghan B. Kilbane
Hon. John P. O'Connor, Visiting Judge