[Cite as *Moon v. Trotwood Madison City Schools*, 2014-Ohio-1110.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

TIFFNEY MOON, GUARDIAN, et al.          :

    Plaintiffs-Appellants          :          C.A. CASE NO.     25779

v.          :          T.C. NO.     12CV6239

TROTWOOD MADISON CITY SCHOOLS,   :          (Civil appeal from
et al.          Common Pleas Court)

    Defendants-Appellees          :

                                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____21st_____ day of _____March_____, 2014.

. . . . . . . . . .

SEAN BRINKMAN, Atty. Reg. No. 0088253 and AARON G. DURDEN, Atty. Reg. No. 0039862, 10 W. Monument Avenue, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellant

RAYMOND H. DECKER JR., Atty. Reg. No. 0069208, 36 East Seventh Street, Suite 2420, Cincinnati, Ohio 45202
    Attorney for Defendants-Appellees

. . . . . . . . . .

FROELICH, J.

{¶ 1} Tiffney Moon and her minor daughter, "D." (collectively, "Moon"), appeal from the trial court's grant of summary judgment to Trotwood-Madison City Schools, Principal Tyrone Nadir, Vice Principal Taiwo Sutton, and unnamed substitute sixth grade

teachers on the ground that they were entitled to sovereign immunity.

{¶ 2} For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 3} Construing the evidence in the light most favorable to Moon, as required by Civ.R. 56, the record reveals the following facts:

{¶ 4} On January 23, 2012, D. was a sixth grade student at Trotwood-Madison Elementary School. Nadir was the school's principal, and Sutton was the vice principal. On January 23, the school's sixth grade teachers were on professional leave, as approved by Nadir. The approximately 174 sixth grade students were supervised by six substitute teachers. One teacher was assigned to each classroom (for an average of one teacher per 29 students).

{¶ 5} At the end of each school day, the students in each class are to form a line in an orderly fashion, and the teacher leads his or her line through the hallway. Students are to remain in the line until they reach the parking lot where the school buses are located. Dismissal procedures are discussed and practiced at the beginning of the year and quarterly. No other student has been injured during the dismissal process during the past five years.

{¶ 6} At the end of the school day on January 23, 2012, the substitute teachers stood at the front of each class of students. According to D.'s affidavit, the sixth grade students went into the hallway, but they did not line up for dismissal. Sixth grade students began to run through the hallway. A group of students pushed D., causing her to fall, and "trampled" her while she was on the ground. Another group of students helped her up. A substitute teacher asked D. if she were okay; D. shook her head yes. No teacher or

administrator was aware that D. was injured. Later that day, D. sought treatment at the emergency department of Children's Medical Center in Dayton. In her brief, D. states that she was diagnosed with a fracture of transverse process of first lumbar vertebra and a neck contusion.

{¶ 7} On August 28, 2012, Moon brought suit against Trotwood-Madison City Schools ("the school district"), Nadir, Sutton, and three John/Jane Doe substitute teachers,[1] claiming recklessness by (1) the substitute teachers in failing to control the students, (2) the school district, Nadir, and Sutton in failing to provide adequate supervision, and (3) the school district in the failure of its employees to prevent or control the dangerous activities of its students. The school district, Nadir and Sutton filed an answer denying the claims and asserting several affirmative defenses, including that they were immune from liability under R.C. Chapter 2744, Ohio's sovereign immunity statute.

{¶ 8} The school district, Nadir and Sutton subsequently moved for summary judgment, claiming that they and the unnamed substitute teachers were immune from liability. The trial court agreed and granted the motion. The trial court concluded that Trotwood-Madison City Schools, a political subdivision, was immune under R.C. 2744.02 and that none of the exceptions to that immunity applied. The court further stated that, even if one of the exceptions under R.C. 2744.02(B) applied, immunity was reinstated under R.C. 2744.03(A)(3) and (5). As for Nadir, Sutton, and the substitute teachers, the trial court held that Moon failed to set forth evidence demonstrating a genuine issue of material fact that the

---

[1] The substitute teachers were later identified as Diana Branham, Brandi Gillespie, Michelle Forshaw, Michelle Goodpaster, Michaele Thomas, and Waverly Warden. Upon Moon's motion, the court ordered that they be joined as necessary parties. However, no amended complaint was filed, and these individual have not been served as named defendants.

administrators' or the substitute teachers' actions were done in a reckless manner so as to lose immunity.

{¶ 9}   Moon appeals from the trial court's judgment, raising one assignment of error.

## II. Sovereign Immunity

{¶ 10}   In their sole assignment of error, Moon claims that the trial court erred in granting summary judgment to the school district, Nadir, Sutton, and the substitute teachers. They argue that a genuine issue of material fact exists as to whether Trotwood-Madison City Schools and its employees acted recklessly.

{¶ 11}   Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party.  *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).  The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated.  *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).  To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).  Those materials include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the action."  *Id*. at 293; Civ.R. 56(C).

**{¶ 12}** Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

**{¶ 13}** We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.,* 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119-20, 413 N.E.2d 1187 (1980). Therefore, the trial court's decision is not granted deference by the reviewing appellate court. *Powell v. Rion*, 2012-Ohio-2665, 972 N.E.2d 159, ¶ 6 (2d Dist.), citing *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

**{¶ 14}** "R.C. Chapter 2744, the Political Subdivision Tort Liability Act, sets forth a comprehensive statutory scheme for the tort liability of political subdivisions and their employees." *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, 997 N.E.2d 490, ¶ 11. The statute "is the General Assembly's response to the judicial abrogation of common-law sovereign immunity. Its manifest purpose is the preservation of the fiscal integrity of political subdivisions." *Estate of*

*Graves v. Circleville*, 124 Ohio St.3d 339, 2010-Ohio-168, 922 N.E.2d 201, ¶ 12, citing *Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450, 453, 639 N.E.2d 105 (1994).

### A. Trotwood-Madison City Schools

{¶ 15} It is undisputed that Trotwood-Madison City Schools is a "political subdivision," as defined by R.C. 2744.01(F). In general, political subdivisions are immune from liability for personal injuries caused by any act of the political subdivision or its employees. R.C. 2744.02(A)(1).

{¶ 16} R.C. 2744.02(B) sets forth five exceptions to this general rule. The first four exceptions impose liability on a political subdivision for certain negligent conduct of the political subdivision itself or of one of its employees, namely: (1) the negligent operation of any motor vehicle while within the scope of employment, (2) acts with respect to proprietary functions of the political subdivisions, (3) failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, and (4) negligent acts that occur within or on the grounds of, and are due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function. The fifth exception imposes liability when another section of the Revised Code expressly imposes liability. R.C. 2744.02(B)(1)-(5). *See, e.g., Crafton v. Shriner Building Co., L.L.C.*, 2d Dist. Montgomery No. 25748, 2013-Ohio-4236, ¶ 10. If one of the exceptions to immunity applies, the political subdivision may still be immune if one of the defenses in R.C. 2744.03 applies. *Riffle v. Physicians & Surgeons Ambulance Serv., Inc.*, 135 Ohio St.3d 357, 2013-Ohio-989, 986 N.E.2d 983, ¶ 15.

{¶ 17} The only exception in R.C. 2744.02(B) that merits any consideration is R.C.

2744.02(B)(4), which states that political subdivisions are generally "liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, *and is due to physical defects within or on the grounds of*, buildings that are used in connection with the performance of a governmental function * * *."    Although Moon has asserted that D. was injured on the grounds of her elementary school, there is no evidence (or even allegation) that the injury was due to physical defects within or on the grounds of the school.   Accordingly, none of the exceptions to immunity set forth in R.C. 2744.02(B), including R.C. 2744.02(B)(4), applies.

{¶ 18}   The trial court properly granted summary judgment to Trotwood-Madison City Schools.

### B.   Nadir, Sutton, and the Substitute Teachers

{¶ 19}   R.C. 2744.03(A)(6) grants employees of political subdivisions immunity from liability, unless any of three exceptions to that immunity apply.   *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 21.   Those exceptions are (1) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; and (3) civil liability is expressly imposed upon the employee by a section of the Revised Code.   R.C. 2744.03(A)(6)(a)-(c).   Moon claims that Nadir and Sutton acted recklessly in determining the amount of needed supervision for the sixth grade students and that Nadir was reckless in assigning the substitute teachers.   Moon further claims that the substitute teachers were reckless in failing to control their students.

**{¶ 20}** The terms "wanton" and "reckless" describe different and distinct degrees of care and are not interchangeable. *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph one of the syllabus. They are sometimes described "as being on a continuum, i.e., willful conduct is more culpable than wanton, and wanton conduct is more culpable than reckless." *Id.* at ¶ 42 (Lanzinger, J., concurring in judgment in part and dissenting in part).

**{¶ 21}** Recklessness is a high standard. *Rankin v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 37. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson* at ¶ 34, adopting 2 Restatement of the Law 2d, Torts, Section 500 (1965).

**{¶ 22}** Mere negligence in the performance of an employee's duties is insufficient to meet this high standard. *See O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 74. As stated by the Ohio Supreme Court, an individual's conduct "'is in reckless disregard of the safety of others if * * * such risk is substantially greater than that which is necessary to make his conduct negligent.'" *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994), quoting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965).

**{¶ 23}** Even when viewing the evidence in Moon's favor, Nadir and Sutton's conduct does not meet the high standard of recklessness, as a matter of law.[2] Nadir and

---

[2] On appeal, Moon does not argue that the administrators and substitute

Sutton submitted evidence in the form of the school district's response to Moon's first set of interrogatories. The answers reflect that there were six teachers for the approximately 174 sixth grade students (a ratio of one teacher for every 29 students) on January 23, 2012. The students' assigned classroom teachers had been granted professional leave, but a substitute teacher was provided for each of the classes. The school had established dismissal procedures, which provided that students were to line up in their classroom and walk in a straight line down the hallway to the parking lot where the buses parked. There is a classroom teacher responsible for walking each homeroom class out to the bus; once the students are outside, there are more teachers present, including administrators. The students were informed of the procedures at the beginning of the year, and the procedures were reviewed quarterly. No student had been injured during dismissal over the previous five years. The interrogatory responses indicated that, on January 23, 2012, the "location of each person supervising the dismissal of the 6th grade students was at the front of the line" and that a teacher was present during the dismissal of D.'s class. (Defs' Ans. to Inter. #5, #7.)

{¶ 24} As stated above, Moon opposed the summary judgment motion with an affidavit by D. The affidavit indicated that, at the end of the day, the sixth grade students went into the hallway, they did not line up, and they began running through the hallway. (We note that Moon repeatedly states on appeal that all of the substitute teachers supervising dismissal stood at the front of the line of students.) D. was injured when some students

---

teachers acted with malicious purpose, in bad faith, or in a wanton manner.
Accordingly, we confine our discussion to recklessness.

knocked her down and trampled her.

**{¶ 25}** Even accepting D.'s statements as true, there is no evidentiary support for Moon's conclusory assertion that the one teacher per 29 students ratio was reckless. Although D. was injured by other students' running down the hallway on January 23, 2012, that fact does not, by itself, create a genuine issue of material fact as to whether Nadir and Sutton acted recklessly in determining the necessary level of supervision and assigning teachers on that day. Nadir and Sutton were entitled to immunity, as a matter of law.

**{¶ 26}** We likewise find no genuine issue of material fact as to the substitute teachers' recklessness. Moon asserts that the substitute teachers "failed to control the students and students ran through the hallway, pushed [D.] to the ground, and trampled her." In essence, Moon argues that the sixth grade students' wrongful conduct establishes recklessness on the part of the substitute teachers. Moon further states that "six (6) people standing in front of a group of 174 running students created a substantial risk of injury."

**{¶ 27}** Again, without minimizing the trauma that D. experienced, there is no evidence that the substitute teachers acted with a "conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances." The administrators' evidence demonstrated that the elementary school had established dismissal procedures, that the six substitute teachers supervised dismissal of the sixth grade students on January 23, 2012, and that the substitute teachers were at the front of the lines of students. D.'s affidavit indicates that the students did not follow the dismissal procedures and, instead, ran down the hallway. (Despite D.'s affidavit, Moon repeatedly emphasizes in their appellate brief that "[a]ll the substitute teachers supervising the dismissal stood at the

front of the line of students.") Even accepting D.'s affidavit as true, Moon has not identified any specific behavior on the part of the substitute teachers (as opposed to the sixth grade students) that amounts to reckless conduct.   The fact that students misbehaved by running to the school buses does not, alone, create a genuine issue of material fact regarding recklessness by the substitute teachers.

{¶ 28}  Accordingly, we conclude that the trial court did not err in granting judgment, based on sovereign immunity, to the defendants on Moon's claims.

### III.  Conclusion

{¶ 29}  The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, J. and WRIGHT, J., concur.

(Hon. Thomas R. Wright, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Sean Brinkman
Aaron G. Durden
Raymond H. Decker Jr.
Hon. Mary Katherine Huffman