[Cite as *Berridge v. McNamee*, 2016-Ohio-4716.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| SHARON BERRIDGE, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | C.A. CASE NO. 26933 |
| | : | |
| v. | : | T.C. NO. 14CV3575 |
| | : | |
| DAVID M. McNAMEE, et al. | : | (Civil appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___30th___ day of ___June____, 2016.

. . . . . . . . . .

F. HARRISON GREEN, Atty. Reg. No. 0039234, Executive Park, Suite 230, 4015 Executive Park Drive, Cincinnati, Ohio 45241
        Attorney for Plaintiffs-Appellants

JOSEPH W. BORCHELT, Atty. Reg. No. 0075387 and IAN D. MITCHELL, Atty. Reg. No. 0090643, 525 Vine Street, Suite 1700, Cincinnati, Ohio 45202
        Attorneys for Defendants-Appellees

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Sharon Berridge, filed November 27, 2015. Sharon appeals from the trial court's decision granting summary judgment in favor of attorney David McNamee and McNamee Law Office, LLC ("Appellees") on the verified complaint of Sharon Berridge and her two minor children ("Appellants").

{¶ 2} The record reflects the following background. On September 18, 2012, Appellants filed a Verified Complaint with Jury Demand against Rita Thomason and Standard Insurance Company ("SIC"), Montgomery County Common Pleas Case No. 2012 CV 06713. According to the complaint, Sharon and Noel Berridge were married on January 6, 1997, and two children were born as issue of the marriage. The complaint provides that Sharon and Noel were granted a Final Judgment and Decree of Divorce on March 29, 2000. The complaint alleges that the parties' Final Decree required Noel to name the couple's two children as beneficiaries of any work-provided life insurance policies, and that Noel had a life insurance policy through his employer which was purchased from SIC. The complaint alleged that at the time of his death on May 9, 2011, Noel failed to comply with the Final Decree, and SIC dispersed the life insurance proceeds to Rita Thomason, the named beneficiary on Noel's policy. The complaint alleged tortious interference with contract (Count I); breach of fiduciary duty (Count II); civil conspiracy (Count III); declaratory judgment (Count IV). Appellants sought an order that SIC pay to them $113,200.00 allegedly owed to them under the life insurance policy and pursuant to the final decree.

{¶ 3} On October 19, 2012, SIC filed a Notice of Removal in the U. S. District Court for the Southern District of Ohio, Western Division, asserting that the matter was removable because Appellants sought to recover life insurance benefits under an employee welfare benefit plan governed by ERISA. The federal court dismissed the state claims and ordered Appellants to show cause why their injunctive relief claims should not be dismissed. The matter was ultimately dismissed without prejudice.

{¶ 4} On August 7, 2013, Appellants filed a Verified Complaint against Rita

Thomason, alleging tortious interference with contract (Count I), civil conspiracy (Count II), and declaratory judgment (Count III), Montgomery County Common Pleas Case No. 2013 CV 04669.  On October 9, 2013, the trial court entered an Order of Dismissal, without prejudice, for failure to prosecute.

{¶ 5} On August 30, 2013, SIC filed a complaint for declaratory judgment in the U.S. District Court for the Southern District of Ohio, naming Appellants and Rita Thomason as defendants. Rita asserted a cross-claim.   In the absence of an answer or appearance by Appellants, motions for default judgment were filed by SIC on March 20, 2014, and by Rita on April 21, 2014, and the federal court granted the motions.

{¶ 6}  Appellants herein alleged six counts of legal malpractice in their June 18, 2014 verified complaint against Appellees. According to the complaint, Appellees failed to properly protect and prosecute the claims in Case No. 2012 CV 06713 and were negligent in allowing a default judgment to be entered against them in federal court. Appellants asserted that Appellees were negligent in failing to prosecute the claims in Case No. 2013 CV 04669. Appellants asserted that there "is a direct link between the defendants malpractice and the plaintiffs having not received or retained their property and assets" in Case Nos. 2012 CV 06713, 2013 CV 04669, and in the declaratory judgment action commenced by SIC in federal court.

{¶ 7}  Appellees filed an Answer on July 17, 2014. On September 14, 2015, Appellees filed Defendants' Motion for Summary Judgment, and on September 17, 2015, Appellees filed David McNamee's Affidavit.

{¶ 8}  David's Affidavit provides that he has "practiced in family law, insurance matters, and probate matters for approximately eighteen years."   According to

McNamee, he is "competent to testify as an expert regarding the standard of care for an attorney practicing in the same fields." McNamee averred that Sharon retained him "in July 2012 to represent her minor children and in a civil action to obtain life insurance benefits from Rita Thomason and [SIC]." According to David, "[f]rom the beginning of the case, I explained to [Sharon] that it would be difficult to prove Rita Thomason's and/or [SIC's] liability for the value of the benefits." David stated that after he filed the verified complaint in the court of common pleas, SIC removed the case to the U.S. District Court for the Southern District of Ohio, "a court in which I was not admitted to practice." David averred that he filed the required paperwork to appear pro hac vice in order to continue representing Berridge in federal court.

{¶ 9} McNamee averred that after "the case in federal court was dismissed as a result of [SIC's] Rule 12(b)(6) motion, I re-filed the case against Rita Thomason in Montgomery County." According to McNamee, after "service could not be perfected against Rita Thomason in Montgomery County Court of Common Pleas Case No. 2013 CV 04669, the Court dismissed the action without prejudice." The affidavit provides that after the dismissal, he "informed [Sharon] that our prospects for success were not high, as there was no evidence that either Thomason or [SIC] had any knowledge of the Berridge divorce decree." David averred that after SIC "filed a declaratory judgment action in federal court in October 2013, I explained to [Sharon] that I could not continue representing her in the case and would be stepping down." Finally, David averred that in his expert opinion, he "did not violate the standard of care at any time while furnishing legal services to the Plaintiffs, and he "zealously pursued all claims on behalf of the Plaintiffs as my clients and did not proximately cause them any damages."

{¶ 10} Appellees asserted that they were entitled to summary judgment as a matter of law, pursuant to Ohio's "case-within-a-case doctrine," because Appellants cannot show that "they would have been entitled to recover anything in the underlying litigation." Appellees provided the following three bases for summary judgment:

(1) Plaintiffs could not have been successful in obtaining a judgment naming them as proper beneficiaries under the Policy because they did not comply with the Policy's requirements for submitting a claim; (2) Plaintiffs would not have been successful against Rita Thomason on the underlying claims because they have no evidence she engaged in undue influence or malfeasance; and (3) any and all claims Plaintiffs could have brought against [Noel] Berridge's estate related to the Policy benefits were barred by operation of Ohio law by the time David McNamee was retained to represent Plaintiffs.

{¶ 11} Citing David's affidavit, Appellees asserted that Appellants "are not entitled to recover on their legal malpractice claim because David McNamee met or exceeded the applicable standard of care at all times during his representation of Plaintiffs." Finally, Appellees asserted that they were entitled to summary judgment because Appellants had time to "recover" from the default judgment when they retained replacement counsel.

{¶ 12} In opposing the motion for summary judgment, Appellants asserted in part as follows:

In the present case, Defendants have failed to perform their duties towards Plaintiffs and have failed to exercise the necessary standard of care expected of attorneys toward their client. Defendants' performance/non-

performance, which amounts to his failure to adhere to the standard of care necessary for an Ohio attorney, constituted the following: Mr. McNamee raised unwarranted claims in state court against [SIC] and Rita K. Thomason which amount to incompetent representation. Defendants failed to raise and pursue viable equitable or other legal claims against Ms. Thomason. Further, Defendants failed to take reasonable steps to serve process in the second action, resulting in a second dismissal of the claims. Defendants without diligence permitted a default against his (sic) clients as to a declaratory judgment action filed by [SIC] and as to claims related to that action.

{¶ 13} Appellants asserted that Appellees continued to represent them after the default judgment and did not properly terminate the attorney client relationship. Appellants asserted as follows:

* * *[T]he existence of an attorney-client relationship can be established based on implication from circumstances existing during the relevant period. There are sufficient facts which indicate the existence of an attorney-client relationship between Mr. McNamee and the Plaintiffs after the filing of the declaratory judgment action by [SIC] and through early January 2014. Those facts include among others: Defendants' preexisting representation of the Plaintiffs in other state and federal court lawsuits arising from the same dispute involving the same allegations by the same parties, lack of any written withdrawal or termination of the Plaintiffs' representation, the Plaintiffs' understanding of a continuing attorney-client

relationship, Mr. McNamee's failure to deliver any case file upon the purported termination of representation in October 2013, and a lack of any communication announcing the termination of representation to other parties or to the court.

* * *

**{¶ 14}** Finally, Appellants asserted that Appellees' breach of duty was the proximate cause of their injury. Appellants noted that while Appellees asserted that "the replaced attorney could have prevented the harm suffered by Plaintiffs," such an assertion "is wrong and cannot be accepted because, a non-negligent intervening actor does not break the causal chain. Here, the primary reasons for harm suffered by Plaintiffs is Defendants' negligence."

**{¶ 15}** Appellants supported their memorandum in opposition to summary judgment with the affidavit of Gregory A. Keyser, an attorney licensed to practice law since 1983. Keyser opined that Appellees were liable to Appellants for the reasons articulated in the memorandum, and that Appellees' failures proximately caused the loss of Appellants' claims for the proceeds of the life insurance proceeds. Keyser further opined as follows:

7. * * * Mr. McNamee originally sued [SIC] in the Montgomery County Court of Common Pleas over an alleged erroneous distribution of life insurance proceeds under an employee benefit plan for Noel Berridge. A reasonably competent attorney would know that such lawsuits are governed by ERISA, a body of federal law governing the implementation of employee benefit plans * * * and that any such claims may be made only

in federal court, and that the insurer cannot be liable for benefits paid in accordance with the terms of the employee benefit plan, as were the benefits at issue. In pursuing common law claims against [SIC] in state court, Mr. McNamee breached a duty of competence owed to Plaintiffs.

* * *

9. In addition, Mr. McNamee's original claims against Ms. Thomason, as well as a second lawsuit against Ms. Thomason, rested upon claims that Ms. Thomason knew of a domestic relations order that required Noel Berridge to name his children as the beneficiaries of his employment-related insurance policy, though the order arose in a case between Noel Berridge and Sharon Berridge to which Ms. Thomason was not a party. * * *

10. Mr. McNamee failed to meet the minimum standard of care of a reasonably competent Ohio attorney when he limited his claims against Ms. Thomason to an intentional tort and conspiracy claims and failed to raise equitable claims to recover the proceeds. * * * [A] reasonably prudent attorney would have at least pursued an obvious claim for unjust enrichment against Ms. Thomason, especially in view of the relative lack of solid support for asserted intentional tort claims. In failing to raise any viable equitable claims, Mr. McNamee failed to meet duties of competence and diligence owed to the Plaintiffs. Failure to assert this viable claim for recovery deprived the Plaintiffs of their most reasonable and certain avenue of recovery.

11. Mr. McNamee again failed to meet the minimum standard of care of a reasonably competent Ohio attorney when he filed a second lawsuit against Ms. Thomason in the Montgomery County Court of Common Pleas but failed to achieve service upon Ms. Thomason. * * * A notice of failure of service reminded Mr. McNamee to complete service. However, the record reflects no further step to serve Ms. Thomason, nor did Mr. McNamee petition the court for additional time to complete service. * * *

* * *

13. It is a standard of care in Ohio that a lawyer wishing to withdraw from or terminate representation of a client before the conclusion of a matter issue a writing advising the client of his intended withdrawal or termination. It is also a standard of care and or practice that a lawyer purporting to withdraw from or terminate an attorney-client relationship in a pending matter deliver to the client the necessary file documents relating to the case. It is also the standard that the existence of an attorney-client relationship can be established based on implication from circumstances existing at the relevant time. Ample facts indicate the existence of an attorney-client relationship between Mr. McNamee and the Plaintiffs after the filing of the declaratory judgment action by [SIC] and through early January 2014. Those facts include Mr. McNamee's preexisting representation of the Plaintiffs in other state and federal court lawsuits arising from the same dispute involving the same allegations by the same parties, lack of any written withdrawal or termination of the Plaintiffs' representation, the

Plaintiffs' understanding of a continuing attorney client relationship, Mr. McNamee's failure to deliver any case file upon the purported termination or representation in October 2013, and a lack of any communication announcing the termination of representation to other parties or to the court.

**{¶ 16}** In granting summary judgment in favor of Appellees, the trial court indicated as follows regarding McNamee's alleged breaches of duty:

With regard to the issue of unfounded claims, the record before the Court shows that there was no evidence to show that Rita Thomason or [SIC] knew of the requirement in the divorce decree that Noel Berridge designate his minor children as beneficiaries of the life insurance policy as alleged in the first civil action.* * * However, the Court notes that Sharon Berridge signed a verification of both civil complaints that were filed in which she stated that the facts alleged therein were true and accurate to the best of her knowledge.

The concern that the Court has is what was the reason that these claims were included in the complaint drafted and filed by Defendant McNamee? * * * The fact that the actions were not supported by the evidence gathered after the filing of the complaint does not necessarily mean that they were unfounded. * * * Therefore, the Court cannot conclude as a matter of law that the inclusion of claims that were later admittedly without foundation was a failure to comply with the standards of care required by law.

**{¶ 17}** Regarding the allegation that Appellees failed to include other viable claims,

the court concluded as follows: "Plaintiffs mention unjust enrichment in their memorandum but their expert does not specify what claims he felt existed at the time of filing." The court noted that as unjust enrichment is an equitable remedy, "the defense of laches would likely apply since the Plaintiff did not retain counsel on the matter until July of 2012 which was fourteen months after the death of Noel Berridge and the payment of the life insurance proceeds to Rita Thomason." The court noted that Sharon "took no action after the divorce to ensure that Noel Berridge had complied with the divorce decree provisions." The court concluded that "Plaintiffs have failed to provide sufficient factual evidence to support a finding that a claim of unjust enrichment or another equitable or legal claim was viable."

{¶ 18} Regarding Appellants' assertion that McNamee failed to obtain service on Thomason in the second civil action filed in U.S. District Court and dismissed for lack of prosecution, the court noted that McNamee "did in fact fail to file for the reissuance of summons in the second civil action." The court determined that "action should have been taken to obtain service or obtain additional time to perfect service," and that the alleged failure to act "could meet" the breach element of a legal malpractice claim if proven.

{¶ 19} Regarding Appellants' assertion that Appellees failed to answer the declaratory judgment action in federal court or to obtain an extension of time to do so, the court determined as follows:

> * * * Mr. McNamee's affidavit states that he notified Sharon Berridge that he would not continue to represent her. She claims that the standard of care in Ohio for a lawyer to withdraw from or terminate representation in

an ongoing legal matter is to advise the client in writing. The Court agrees that this is certainly the preferred and safest method and would have been the best practice in this case given the procedural history. * * *

The court concluded that McNamee's failure to advise Sharon in writing "could meet" the breach element of a legal malpractice claim "if that is proven to have caused Plaintiffs damages or a loss."

{¶ 20} The court next analyzed whether Appellants proved a causal connection between any breach of duty by Appellees and Appellants' alleged damage or loss, examining both the " 'case within a case doctrine,' " which requires a legal malpractice plaintiff to prove he would have prevailed in the underlying matter, and the " 'some evidence' " doctrine, which requires only that a legal malpractice plaintiff present some evidence of the merits of the underlying claim. The court determined that the "case within the case" doctrine was applicable to Appellants' claims and further determined as follows:

The underlying issue in this case is whether the Plaintiffs could have recovered the proceeds of the life insurance policy on Noel Berridge's life. The insurance contract had a provision that a beneficiary was required to submit a claim within ninety days of the insured's death. The Plaintiffs have not offered any viable legal theory as to how they could overcome that contractual condition to recover against [SIC] which in the opinion of this Court cannot be done. Further, the Plaintiffs had no evidence that [SIC] had any knowledge of the divorce decree requirements regarding the designation of beneficiaries until five months after it had paid the death benefits to Rita Thomason. The Court sees no claim upon which Plaintiffs

could have succeeded even if the Defendant McNamee had obtained service on Rita Thomason in the second case filed in Montgomery County or if he had entered an appearance in the declaratory judgment action filed in federal court by [SIC].

{¶ 21} Regarding Appellant's assertion regarding the unjust enrichment of Rita Thomason, the court concluded as follows:

* * *[I]n order to prevail on a claim of unjust enrichment against Rita Thomason, the Plaintiffs herein would have had to prove that they conferred a benefit upon her. It is clear on the record in this case that the Plaintiffs did not confer the benefit of the life insurance death benefits upon Rita Thomason. Noel Berridge did that when he designated her as the beneficiary of the policy. Therefore, the Plaintiffs could not have prevailed upon a claim of unjust enrichment against Ms. Thomason. While there may have been other "viable equitable claims" that could have been made, the Plaintiffs have not specified what those claims may have been and it is not the duty of the Court to search for them in a motion for summary judgment.

It is the conclusion of the Court that applying the "case within a case" doctrine, the Plaintiffs have not presented evidence that demonstrates that there is a genuine material issue of fact or shows that the Defendant is not entitled to summary judgment as a matter of law. However, assuming for purposes of argument, [if] the "some evidence" rule were to be applied in this case as argued by Plaintiffs, the Court finds that the evidence cited by

Plaintiffs does not even meet that standard. Simply stated, the Plaintiffs have not provided any evidence that shows to the Court they had even some evidence that supported a claim against [SIC] or Rita Thomason. Without that, they have no claim against the Defendants in this case.

{¶ 22} Appellants assert three assignments of error and summarize their argument as follows:

A REASONABLE FINDER OF FACT COULD FIND THAT APPELLANT- PLAINTIFF HAS PROVEN ITS MALPRACTICE CLAIMS.

A. Defendant McNamee owed a duty to the plaintiff.

B. Defendant McNamee breached his duty to Appellant-Plaintiff.

C. Causation

i. Some evidence standard should apply.

ii. Even if the "case within a case" standard applied, there would remain a genuine issue of material fact with regard to causation.

{¶ 23} Appellants assert that as their attorney of record, McNamee owed them a duty, and that, as the trial court found, he breached that duty by "failing to file for a reissuance of summons in the second civil action, causing dismissal of a case for lack of prosecution sixty-days after it was filed," and by failing "to properly notify Appellant-Plaintiff that he would not continue to represent her in a declaratory judgment action filed by Standard in federal court in October 2013," resulting in McNamee's failure "to file an answer to the declaratory judgment action or to obtain an extension of time to answer." Appellants assert that the trial court erred in determining that "there was no breach of duty

by Defendant McNamee for Appellant-Plaintiff's legal malpractice claims based on Defendant's failure to plead adequately." According to Appellants, "McNamee should have plead (sic) negligent claims, intentional claims, and equitable claims like unjust enrichment and constructive trust * * * which do not depend on the state of mind of Ms. Thomason where Ms. Thomason's state of mind was not known by Appellant-Plaintiff or Appellee-Defendant."

{¶ 24} Regarding causation, Appellants assert that the "some evidence standard should apply," and that there "remains a genuine issue of material fact as to whether Appellant-Plaintiff could prove causation under the some-evidence standard." Appellants argue as follows:

In the present case, the trial court erred by failing to consider the fact that Appellant-Plaintiffs would have sustained harm even if they may be unable to prove that they would have been successful in the underlying action. It is apparent that Appellant-Plaintiffs' entitlement to the insurance proceeds was not based on success in the action, but on the earlier divorce settlement. Here, the trial court failed to consider the fact that as per the divorce decree on March 29, 2000, * * * it was specifically stated that, "Both parties shall name the minor children of the parties as the sole beneficiaries of any work provided life insurance so long as there is a child support responsibility."

{¶ 25} Appellants argue that in "Ohio, it is settled that the named beneficiaries of an insurance policy under the terms of a separation agreement embodied in a divorce decree have an equitable right superior to the legal right of the designated beneficiary of

the policy." They assert that they "are the proper beneficiaries of Mr. Berridge's life insurance proceeds, irrespective of the designated beneficiary, Ms. Thomason." According to Appellants, they "have some-evidence supporting a viable constructive trust claim, and therefore, summary judgment is inappropriate."

{¶ 26} Finally, Appellants assert that even if the "case-within-a-case doctrine" applies, they "would have prevailed in the underlying matter of legal malpractice against Defendant McNamee by imposing [a] constructive trust claim.   In the present case, the facts clearly show[] that under constructive trust there exists a legal principle which can serve as a basis for equitable relief."   Appellants assert that McNamee's arguments "regarding laches and the time period in the insurance contract are of no avail.   In equity, such technicalities should not operate to deprive a person of their rights."   Appellants assert as follows:

> * * * On May 9, 2011, Mr. Berridge died.   Mr. Berridge's life insurance policy contained a provision requiring filing of a claim for the proceeds within ninety days of his death.
>
> On or around May 23, 2011, Ms. Thomason completed the requirements and received $113,200.00 in death benefits under Mr. Berridge's life insurance policy.   On October 14, 2011, Ms. Berridge contacted [SIC]. The ninety days limit to claim the insurance proceeds ended by August 2011.
>
> * * * Ms. Berridge was unaware of the time limit for claiming insurance proceeds because the policy was with Mr. Berridge. * * * The court failed to consider the fact that the children were entitled to the insurance proceeds

under the divorce agreement. Therefore, the children should not be prevented from the rights they were entitled to from the time of the divorce under laches, statues (sic) of limitations, and the notice requirement.

Moreover, Ms. Berridge had no reason to think that she needed to file an insurance claim when the children's rights were secured by the divorce decree. She was under the belief that as per the divorce decree the two children were the sole beneficiaries of any proceeds under the work provided life insurance of Mr. Berridge. Accordingly Ms. Berridge was awaiting a notice from Mr. Berridge's employment after his death as per the divorce settlement.

However, when Ms. Berridge did not receive any such notice, she did contact [SIC] within a reasonable time of five months, in October 2011, after Mr. Berridge's death. Ms. Berridge acted diligently by filing suit against Ms. Thomason in the underlying action as soon as it became clear that [SIC] had given the funds to Ms. Thomason in the underlying action.

Appellants assert that even if Sharon acted unreasonably, "under equity, this should not be allowed to harm the rights of the children who are clearly innocent. * * * The month late filing is a technicality which should not bar Plaintiff-Appellant's equitable trust claim."

{¶ 27} Appellees respond that "the trial court did not err by refusing to apply the 'some evidence' standard." According to Appelles, "Ohio case law unequivocally holds that the 'case-within-a-case' doctrine applies to 'lost opportunity' cases, such as this one, where the plaintiff alleges that the attorney's conduct or failure to act directly resulted in a loss of the plaintiff's opportunity to present and/or litigate the underlying claim."

According to Appellees, "Appellants' 'lost opportunity' claim in this matter is 'inextricably linked' to the outcome of the underlying cases, such that Appellants are required to show that they would have been successful on their underlying claims."

**{¶ 28}** Appellees further assert that even if the "some evidence" standard were applied to Appellants' legal malpractice claim, Appellants failed to meet their summary judgment burden. Appellees assert that Appellants "have simply presented no record evidence as to how Mr. McNamee and Appellants could have successfully asserted a claim for the at-issue life insurance proceeds." According to Appellees, "although it is entirely unnecessary for this Court to analyze Appellants' legal malpractice claim under the old 'some evidence' standard, the record demonstrates that Appellants have failed to meet the burden established by even that less-exacting standard."

**{¶ 29}** Regarding Appellants' argument that they would have prevailed in the malpractice litigation on a claim of constructive trust, Appellees assert that Appellants waived the argument. Appellees assert as follows:

The term "constructive trust" had never been uttered in this litigation until the Appellants filed their brief. The Appellants' obligation from the outset of this malpractice litigation has been a simple one: identify claims that Mr. McNamee and Appellants could have succeeded upon in the underlying matter. The Appellants' pleadings did not articulate an underlying constructive trust claim. Appellant did not identify a constructive trust claim in response to written discovery that was specifically designed to elicit the viable underlying cases of action. Appellant Sharon Berridge did not identify a potential constructive trust claim when asked in

her deposition to identify potentially viable claims. And finally, Appellants' expert never opined as to a constructive trust theory as a potentially viable underlying cause of action that Mr. McNamee could have or should have asserted. * * *

Appellees assert that Appellants cannot "interject a new substantive theory for the first time during an appellate review." McNamee argues that "the *only* equitable theory that could conceivably be available for this Court to review on appeal would have been unjust enrichment; yet, as Appellants' Brief makes clear, they have already abandoned that argument."

{¶ 30} Appellees note that although the parties dispute the exact date that their attorney-client relationship was terminated, "there is no disagreement that it was certainly concluded by January 3, 2014 at the latest," and "the motions for default judgment were not even filed by [SIC] and Thomason in the federal declaratory action until March 20, 2014 and April 21, 2014." Appellees assert that "at the time Attorney McNamee was fired, there was still ample time to assert a viable equitable claim, if such a claim existed. Accordingly, Appellees cannot be considered the proximate cause of any damages incurred in the declaratory judgment action." Appellees argue that "even if Appellants' argument concerning constructive trust could be entertained and accepted as plausible, it was not the Appellee who proximately caused them to lose that opportunity."

{¶ 31} Appellees argue, "assuming *arguendo* that Appellants' new theory for recovery in equity can be raised now on appeal, Appellants have failed to establish that such claims would have been successful." Appellees assert as follows:

In particular, and as the trial court's decision discussed, Appell[ant]

Sharon Berridge's failure to make a claim with [SIC] for the benefits, failure to contact [SIC] at all until nearly seven months *after* Jim Berridge's death, and failure to contact an attorney to bring claims for the life insurance benefits until fourteen months after the [death] and well after his estate has closed, constitutes a *laches* defense whereby Appellants' claims in equity would be barred.

{¶ 32} Finally, Appellees note that Appellants argue that the trial court erred in finding that McNamee "did not breach the duty of care by failing to plead what amount to spurious causes of action in the underlying lawsuits to obtain the life insurance proceeds from Thomason and [SIC]." Appellees further note that "this sub-issue was not dispositive for the trial court judge, so it is entirely unclear why Appellants believe it is relevant to this appeal." Appellees conclude that the trial court correctly recognized that "the complaint initially filed by David McNamee was prepared in light of statements by Appellant Sharon Berridge that she knew were unsupported by any evidence." Appellees note that claims for intentional torts and tortious interference were included in the complaint "because Sharon Berridge told him she believed Rita Thomason had used Jim's computer to change the beneficiary status on his life insurance policy," but then later conceded that she "had no information that Thomason even knew of the policy *or* the divorce decree." Appellees assert that "Appellants have failed to show that David McNamee breached the standard of care by pleading tortious interference and intentional tort claims against Thomason and/or [SIC], while failing to plead various equitable claims."

{¶ 33} In reply, Appellants again assert that the trial court erred in applying the "case-within-a case" doctrine, and that a genuine issue of material fact exists regarding

whether Appellants provided enough evidence to prove they would have prevailed in the underlying matter. Appellants assert that there is no per se rule dictating that "lost opportunity" cases must be analyzed under the "case-within-a-case" doctrine. Finally, Appellants assert that the trial court "should have found that the Defendants' breach of duty to Ms. Berridge and her minor children was the proximate cause of the damages in this case."

{¶ 34} As this Court has previously noted:

Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010–Ohio–4505, 936 N.E.2d 481, ¶ 29; *Sinnott v. Aqua–Chem, Inc.*, 116 Ohio St.3d 158, 2007–Ohio–5584, 876 N.E.2d 1217, ¶ 29. When reviewing a summary judgment, an appellate court conducts a de novo review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119–20, 413 N.E.2d 1187 (1980). Therefore, the trial court's decision

is not granted deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist. 1993).

* * *

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact for each of the elements of its claim. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988); *Wells Fargo Bank, N.A. v. Goebel*, 2d Dist. Montgomery No. 26244, 2015–Ohio–38, ¶ 16. Only if this burden is met, the non-moving party then has the burden of providing sufficient evidence to prove that there are material issues of fact that are genuinely contested. *Goebel* at ¶ 17. "Throughout, the evidence must be construed in favor of the nonmoving party." *Id.* * * *

*Huntington Natl. Bank v. Payson*, 2d Dist. Montgomery No. 26396, 2015-Ohio-1976, ¶ 14,16.

{¶ 35} As this Court has further noted, to prevail on a legal malpractice claim, Appellants must prove: "(1) that the attorney owed him a duty or obligation, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there was a causal connection between the conduct complained of and the resulting damage or loss. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164." *Werts v. Penn*, 164 Ohio App. 3d 505, 2005-Ohio-6532, 842 N.E.2d 1102, ¶ 17.

{¶ 36} As this Court has previously noted:

" 'The duty of an attorney to his client is to " * * * exercise the

knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, and to be ordinarily and reasonably diligent, careful, and prudent in discharging the duties he has assumed." ' " *Yates v. Brown*, 185 Ohio App.3d 742, 2010-Ohio-35, 925 N.E.2d 669, ¶ 17 (9th Dist.), quoting *Palmer v. Westmeyer*, 48 Ohio App.3d 296, 298, 549 N.E.2d 1202 (6th Dist.1988), quoting 67 Ohio Jurisprudence 3d, Malpractice, Section 9, at 16 (1986). Rule of Professional Conduct 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." * * *

*McCarty v. Pedraza*, 2014-Ohio-3262, 17 N.E.3d 71, ¶ 8 (2d Dist.). As the trial court noted, "[t]here is no dispute that Defendant McNamee did owe a duty or obligation to the Plaintiffs as he did accept employment as their counsel."

**{¶ 37}** Even if we assume that Appellees breached a duty to Appellants in failing to file for a reissuance of summons in Case No. 2013 CV 04669 and in failing to properly notify Appellants in writing that Appellees' representation was terminated, Appellants have presented no evidence of a causal connection between those alleged breaches and their loss of the insurance proceeds. Regarding the applicable legal malpractice causation standard that applies to Appellants' claims, this Court has distinguished the "some evidence" standard set forth in *Vahila* from the "case-within-a-case" standard set forth in *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, 893 N.E.2d 173 as follows:

The some-evidence standard applies in cases in which a plaintiff's damage or loss has been suffered "regardless of the fact that [the plaintiff]

may be unable to prove that [he] would have been successful in the underlying matter(s) in question." *Vahila* at 427, 674 N.E.2d 1164. In such a case, the plaintiff need provide only "some evidence of the merits of the underlying claim." *Id.* at 428, 674 N.E.2d 1164. In *Vahila*, the plaintiffs sued their attorneys after the attorneys represented them in several civil and criminal matters. The plaintiffs claimed that the attorneys' failure to properly disclose matters related to, and the consequences of, various plea bargains and settlement arrangements resulted in losses of $100,000 and lost profits of at least $200,000. The *Vahila* Court held, "[b]ased on the theory that plaintiffs proposed, * * * that 'given the facts of [the] case, [the plaintiffs] have arguably sustained damage or loss regardless of the fact that they may be unable to prove that they would have been successful in the underlying matter(s).' " *Environmental Network* at ¶ 14, quoting *Id.* at 427, 674 N.E.2d 1164.

In *Environmental Network*, "the Supreme Court focused on the need to link the attorney's action (or inaction) to the adverse result." *Gijbertus D.M. van Sommeren v. Gibson*, 2013-Ohio-2602, 991 N.E.2d 1199, ¶ 30 (6th Dist.). The *Environmental Network Court* said that the case-within-a-case doctrine applies if the theory of the malpractice case places the merits of the underlying litigation directly in issue. *Environmental Network* at ¶ 17–18. In this type of case, said the Court, "it is insufficient for the plaintiff to present simply 'some evidence' of the merits of the underlying claim." *Id.* at ¶ 19; *see also Gijbertus* at ¶ 32 ("After *Environmental Network*, the

demonstration of causality in legal malpractice cases requires more than just 'some evidence' to proximately relate the specific act or omission that is held up as the attorney's breach of duty to the client's damages."). "[T]he plaintiff must establish that he would have been successful in the underlying matter." *Id.* The plaintiffs in *Environmental Network* sued their attorney after the attorney settled the underlying action instead of trying it, claiming that they would have had a better outcome if the matter had gone to trial. Unlike the *Vahila* plaintiffs, said the Court, the plaintiffs in *Environmental Network* "could recover only if they could prove that they would have succeeded in the underlying case and that the judgment would have been better than the terms of the settlement." *Id.* at ¶ 18. The Court concluded that "the theory of this malpractice case places the merits of the underlying litigation directly at issue because it stands to reason that in order to prove causation and damages, appellees must establish that appellant's actions resulted in settling the case for less than appellees would have received had the matter gone to trial." *Id.*

*McCarty v. Pedraza*, 2014-Ohio-3262, 17 N.E.3d 71, ¶ 17-18 (2d Dist.)

**{¶ 38}** We conclude, as did the trial court, that Appellees are entitled to summary judgment under either theory of causation based upon the lack of any evidence in support of their claims. In the second civil action against Thomason, Case No. 2013 CV 04669, Appellants alleged tortious interference with contract and civil conspiracy, and they sought a declaratory judgment that they are the "true, legal and factual beneficiaries under the policy."

**{¶ 39}** As this Court has previously noted:

"The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 1999–Ohio–260, 707 N.E.2d 853, paragraph one of the syllabus.

*Kademian v. Marger*, 2d Dist. Montgomery No. 24256, 2012-Ohio-962, ¶ 93

**{¶ 40}** As this Court has further previously noted:

The tort of civil conspiracy has been defined as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640. "The malice involved in the tort is 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.' " *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859, citation omitted. An underlying unlawful act or tort is required before a party can prevail on a civil conspiracy claim. *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481.

Pursuant to Ohio law, a civil conspiracy claim standing alone cannot be the subject of a civil action. *Nosker v. Greene County Regional Airport Authority* (May 23, 1997), Greene App. No. 96 CA 101, unreported, citations omitted. "The general rule is that a conspiracy cannot be made the subject

of a civil action unless something is done which, without the conspiracy, would give a right of action." *Minarik v. Nagy* (1963), 8 Ohio App.2d 194, 195, 193 N.E.2d 280. Instead, it must be coupled with another independent cause of action. *Palmer v. Westmeyer* (1988), 48 Ohio App.3d 296, 301, 549 N.E.2d 1202.

*Rachlow v. Dee*, 2d Dist. Montgomery No. 18927, 2002 WL 91288, *3-4 (Jan. 25, 2002).

**{¶ 41}** The following exchange occurred in the course of Sharon's deposition regarding a handwritten note by her provided to McNamee:

Q.  * * * Have you seen this document before?

A.   If I wrote it, then yes.

Q.   And I will just let you know this is a note that was in Dave McNamee's file.

* * *

Q.   * * * And it says in a note to the side, "His ex-girlfriend also had computer access to his policy and could change his info."

Do you see that?

A.   Yes.

Q.   How did you learn that information?

A.   I called Cargill.

Q.   * * * And what did they say?

A.   That they can do it electronically.

* * *

Q.   * * * Do you know if Mr. Berridge had a home computer?

A. I don't know.

Q. So I guess what I'm getting at is, do you have any evidence that Ms. Thomason did change his computer access without his knowledge?

A. I don't have any evidence of that, no.

{¶ 42} Sharon testified as follows regarding a "Proof of Death Claim Form" provided by SIC:

Q. * * * Have you ever seen this document before?

A. No.

* * *

Q. This form is dated May 10, 2011; do you see that? * * *

A. Yes.

* * *

Q. And then it has got the name of the beneficiary listed here as Rita Thomason; do you see that?

A. Yes.

Q. Did anyone ever tell you that it was Cargill who notified [SIC] about Mr. Berridge's death?

A. I don't know who, no.

* * *

Q. Take a look at the first page. This is a letter from [SIC] to Rita Thomason. Have you ever seen this before?

A. No.

Q. And there is a paragraph in the body. It says, "Also, please find

enclosed a beneficiary statement for you to complete and sign, as you are the beneficiary listed under the policy."

Do you see that?

A. Yes.

Q. * * * Do you have any evidence that would suggest it was Ms. Thomason who first contacted [SIC] about Mr. Berridge's death?

A. I don't have a clue.

Q. * * * Do you know whether Ms. Thomason had the divorce decree at the time she received this letter, if you know?

A. I don't know.

When asked if she had "any evidence that Ms. Thomason influenced [Noel] to change the beneficiary to her of the life insurance policy," Sharon responded, "No."

{¶ 43} The following exchange occurred in the course of Sharon's testimony regarding Rita's affidavit attached to her answer in Case No. 2012 CV 06713:

Q. * * * Take a look at the affidavit. And I want to start on the second page of it. There is a bullet point at the top that starts, "I was aware."

Do you see that?

A. Yes.

Q. * * * And Ms. Thomason says, "I was aware that Noel obtained a divorce from his former wife, but I never saw a Decree nor did we discuss same."

Do you see that?

A. Yeah.

Q. Do you have any evidence to suggest that that's not true?

A. No, I don't.

Q. The next bullet says, "I was not aware that I was the beneficiary on Noel Berridge's life insurance policy until after his death." Do you have any evidence to suggest that that's not true?

A. No.

Q. The next bullet says, "I have learned about the Decree only as a result of the Complaint filed in this particular matter, which was served upon me nearly one and one-half years after his death." Do you have any evidence to suggest that that's not true?

A. No.

Q. * * * The last one says, "I never had any contact with the insurance company or knew the name of the insurance company until I received notice from his work after his death that I was named as the beneficiary on his life insurance policy." Do you have any evidence to suggest that that's not true?

A. No.

{¶ 44} Given the lack of evidence that Rita knew of the final decree and the life insurance policy, or that she intentionally procured the breach of the final decree or conspired to do so to obtain the life insurance proceeds, we conclude that no genuine issue of material facts exists, and that Appellees are entitled to judgment as a matter of law on Appellants' claim that the failure to perfect service on Rita in Case No. 2013 CV

04669 caused Appellants to lose the life insurance proceeds.

{¶ 45} Regarding Appellants' assertion that Appellees' failure to properly notify them of the termination of David's representation resulted in a failure to answer the declaratory judgment action commenced by SIC, the following exchange occurred in the course of Sharon's deposition:

Q. Ms. Berridge, I have handed you a document marked as Exhibit S. Remember, we talked about the declaratory judgment action, the one that [SIC] filed against you and Rita?

A. Yes.

Q. This is a docket from that case.

A. Okay.

Q. And I'm going to ask you to look at the very last page, okay?

A. Uh-huh.

Q. There is a docket listing number 18 that says Motion for Default Judgment; do you see that?

A. Yes.

Q. This * * * references a motion for default judgment that was filed by [SIC], and the date is 3/20/14; do you see that?

A. Yes.

* * *

Q. * * * The very next entry is 19. It is an order granting the motion for default judgment; do you see that?

A. Yes.

Q.   And that has a date of April 18th, 2014; do you see that?

A.   Yes.

* * *

Q.   * * * Then look at the next one.   It is number 20.

A.   Okay.

Q.   And this is a motion for Default Judgment filed by Ms. Thomason. * * * Do you see that?

A.   Ye. (sic)

Q.   And the date on that is 4/21/2014; do you see that?

A.   Yep.

Q.   * * * And then the next entry is an order and termination entry; do you see that?

A.   Yes.

* * *

Q.   Ms. Berridge, I have handed you a document marked as Exhibit T.   This is the "Order and Termination Entry" from the declaratory judgment action.   Do you see the date at the top that says April 28th, 2014?

A.   Yes.

Q.   And then, essentially, I'm not going to read through the whole thing, but this document then grants Ms. Thomason's default judgment and terminates the declaratory judgment action.

Do you see that?

A.   Yes.

Q. * * * Do you remember terminating or firing Mr. McNamee?

A. Yes.

Q. Do you remember when you did that?

A. No.

* * *

Q. Ms. Berridge, I have handed you a document we marked as Exhibit U. * * *

A. Okay.

Q. Do you see it has an e-mail address with an asterisk and it has got [ * * * ]?

A. Yes.

Q. Is that your email address?

A. Yes, it is.

Q. And then the date at the top is January 3rd of 2014; do you see that?

A. Yes.

Q. And * * * subject is McNamee Law Office; do you see that?

A. Yes.

Q. And it says, "I am firing you from my children's case * * *. I want my retainer money back of $2500.00."

Do you see that?

A. Yes.

Q. * * * Does this appear to be a true and accurate e-mail?

A. Yes.

Q. So at the time the default judgments were filed that we just saw in the declaratory judgment action, you had already fired Mr. McNamee, correct?

A. I guess, with the dates.

* * *

Q. Ms. Berridge, I have handed you a document we have marked as Exhibit V. * * *

A. Okay.

Q. And the last page has an authorization for release of information. Is that your signature?

A. Yes.

Q. And it is dated April 2nd of 2014; do you see that?

A. Yes.

Q. And this is an authorization, where you give Mr. McNamee permission to give your file to the Attkisson Law Office?

A. Yes.

Q. And then the page before that, in the middle, do you see is a letter of April 3rd, 2014, from Mr. Attkisson to Mr. McNamee?

A. Yes.

Q. I don't want to know what you discussed with Mr. Attkisson, but as of this date, April 3rd of 2014, had you retained him as your lawyer?

A. Yes.

Q.   * * * So before the order and judgment that we looked at in the declaratory judgment action, you had already had another attorney, separate and apart from Mr. McNamee?

A.   Yes.

**{¶ 46}** SIC commenced the declaratory judgment action on August 30, 2013. Sharon testified that she terminated Appellees' representation on January 3, 2014.   The motions for default judgment were filed in March and April of 2014.   As of April 3, 2014, Sharon had retained substitute counsel.   Since Sharon terminated McNamee three and four months before the motions for default judgment were filed, we cannot conclude that any failure to notify her in writing regarding the termination of representation caused Appellants to lose the life insurance proceeds.   Most significantly, Sharon concedes in her brief that while Rita "completed the requirements" to receive the life insurance proceeds, Sharon did not contact SIC until October 2011, five months after Noel's May 9, 2011 death, or hire Appellees until July of 2012. Sharon further concedes that "the ninety days limit to claim the insurance proceeds ended by August 2011."   As the trial court determined, Appellees "have not offered any viable legal theory as to how they could overcome that contractual condition to recover against [SIC]."

**{¶ 47}** Finally, Appellants assert that "Defendant McNamee should have plead * * * equitable claims like unjust enrichment and constructive trust."   We agree with the trial court that Appellees did not breach a duty to Appellant in failing to assert a claim of unjust enrichment, since the elements to be proven in such a claim are "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to

do so without payment." *Wright v. Dayton*, 158 Ohio App.3d 152, 2004-Ohio-3770, 814 N.E.2d 514, ¶ 41 (2d Dist.). As the trial court determined, Noel, not Appellants, conferred the benefit of the life insurance proceeds on Rita, and Appellants could not have prevailed on a claim of unjust enrichment against Rita.

{¶ 48} We agree with Appellees that Appellants waived their right to argue on appeal that Appellees breached a duty to them by failing to assert a constructive trust claim, thereby causing their loss of the insurance proceeds. Appellants' expert opined that their "most reasonable and certain avenue of recovery" was a claim for unjust enrichment, and that Appellees failed to meet the standard of care in failing to assert such a claim. As Appellees assert, Appellants raise their constructive trust argument for the first time on appeal. "It is well settled that a nonconstitutional issue raised for the first time on appeal is not properly before a reviewing court. *See, e.g., Blausey v. Stein* (1980), 61 Ohio St.2d 264, 266, 400 N.E.2d 408." *Shields v. Englewood*, 172 Ohio App. 3d 620, 2007-Ohio-3165, 876 N.E.2d 972, ¶ 68 (2d Dist.). Accordingly, we will not address Appellants' assertion that Appellees' failure to assert a constructive claim caused the loss of the insurance proceeds.

{¶ 49} Having reviewed the entire record, and construing the evidence in favor of Appellants, we conclude that Appellees met their burden of demonstrating the absence of a genuine issue of material fact on Appellants' legal malpractice claims. Since Appellees are entitled to judgment as a matter of law, Appellants' assigned errors are overruled, and the judgment of the trial court is affirmed.

. . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

F. Harrison Green
Joseph W. Borchelt
Ian D. Mitchell
Hon. Rocky A. Coss
(By assignment)