[Cite as *Gevedon v. Decker*, 2021-Ohio-77.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| KENNETH GEVEDON | : | |
| | : | Appellate Case No. 2020-CA-21 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2018-CV-438 |
| v. | : | |
| | : | (Civil Appeal from |
| TERRY DECKER, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of January, 2021.

. . . . . . . . . . .

KONRAD KUCZAK, Atty. Reg. No. 0011186, 130 West Second Street, Suite 1010, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellant

MICHAEL SANDNER, Atty. Reg. No. 0064107, 2700 Stratacache Tower, 40 North Main Street, Dayton, Ohio 45423
      Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Kenneth Gevedon appeals from a judgment of the Clark County Court of Common Pleas, which granted summary judgment in favor of Andrea Decker on his claims of fraudulent conversion and civil conspiracy.   For the following reasons, the trial court's judgment will be affirmed in part and reversed in part, and the matter will be remanded for further proceedings.

## I. Factual and Procedural History

**{¶ 2}** Construing the evidence in the light most favorable to Gevedon, the record reveals the following facts.

**{¶ 3}** Gevedon and Terry Decker[1] operated Wholesale Auto Parts, an after-market auto parts store in New Carlisle, as partners from April 2009 until February 2018.[2] Gevedon and Terry had an oral agreement only.   (Terry Depo. at 14.)

**{¶ 4}** When the partnership started, the business "had no assets and no inventory." (Terry Depo. at 13.)   Terry stated that it takes $300,000 to $500,000 to have a "good and running operating automotive business," so he worked for "quite some time" without compensation.   (*Id.* at 14.)   Terry stated that he and Gevedon agreed that, once the business was established, "we were supposed to invest equally and we were going to split assets, split income, and have an equal split in the operation."   (*Id.* at 14.)   Terry believed it would take three to four years to become established.   (*Id.* at 15.)   Around

---

[1] For sake of clarity, we will refer to Terry Decker and Andrea Decker by their first names.

[2] In his complaint, Gevedon alleged that he owned Wholesale Auto Parts as a sole proprietor and that Terry Decker was employed as manager of the store. (Compl. at ¶ 1-2.)   However, Gevedon described Terry Decker as a partner in his pretrial statement and asserted that this was an uncontested fact.

2014 or 2015, Terry started to draw $1,000 per month.  (*Id.* at 35.)

{¶ 5} Wholesale Auto Parts began in a small location and moved a year later, in 2010, to its present location; both locations were leased.  Terry stated that he initially gave $3,000 to the landlord of the current building, representing six months' rent in advance. (*Id.* at 16-17.)

{¶ 6} Terry described Gevedon as primarily being involved with getting Wholesale Auto Parts started.  (*Id.* at 23-24.)   He stated that Gevedon initially spent approximately $2,000 at an auction and bought shelving.   In addition, the store's inventory was purchased on Gevedon's credit, and Gevedon was responsible for those bills.  (*Id.* at 24.)   Gevedon obtained a vendor's license for the business.  (*Id.* at 31.)   Gevedon or an accounting company ensured that workers' compensation premiums were paid, and sale tax information was provided to Gevedon at the end of each month.  (*Id.* at 29-30.)

{¶ 7} Terry testified in his deposition that Gevedon did not spend time at either business location, and that he (Terry) managed the business's operations.   Terry stated that he was at the business six days a week during business hours.  (*Id.* at 19.)   Terry testified that he hired employees, set employees' salaries, determined what amounts would be paid back out for receivables and what amounts would go to the bank, and kept the books for the business.  (*Id.* at 20-23, 25.)   Terry also decided what inventory would be purchased and what inventory would be returned for credit.  (*Id.* at 33.)   The business used an accounting business in the same building to conduct payroll.  (*Id.* at 28-29.)

{¶ 8} In September 2016, Terry and Andrea, who were not yet married, purchased a home together for $146,000.   Closing documents indicated that they paid a $400 deposit, received a $4,000 credit from the seller, borrowed $138,700, and paid the

balance plus closing costs at closing. (Kuczak 8/27/19 Aff. Ex. A.) On the mortgage application, Terry reported monthly income of $6,138.17; Andrea reported monthly employment income of approximately $3,200 and monthly retirement income of $2,217. (Kuczak 8/27/19 Aff. Ex. B.) Andrea had a residence valued at $100,000 with an existing mortgage of approximately $81,000. (*Id.*) The document disclosed liquid assets of $50,000. (*Id.*)

{¶ 9} Terry and Andrea married on May 20, 2017. (Terry Decker 8/6/19 Aff. at ¶ 10; Andrea Decker Aff. at ¶ 2.)

{¶ 10} Terry stated that the couple remodeled their new home, purchasing supplies on Lowe's and Home Depot credit cards. (Terry Depo. at 39.) In November 2017, Terry and Andrea applied for a home equity loan in the amount of $27,700. (Kuczak 8/27/19 Aff. Ex. C.) The November 2017 appraisal of the residence described numerous renovations to the home.

> * * * Original attached garage was previously converted to Living space. Borrower jackhammered concrete slab to install heat/air ducts and new plumbing within slab. Kitchen has all new cabinetry, quartz counter tops and ceramic tile flooring, and new dishwasher and microwave. Hall bath has new ceramic tile flooring and Vanity/Sink. Pantry has newly installed work sink. Home [has] been painted throughout. Two bedrooms have new carpet. Dining Room and Master Bedroom to have new carpet installed next week. Master Bedroom has new paint, Pine Tongue and Groove ceiling. Master Bath has New Vanity/sink, Toilet at site, not installed, Jetted tub, at site, not installed, and shower stall with ceramic tile

at site, being installed next week.    Master Bath flooring is to be ceramic tile and is at site. * * * Borrower's installed large 15x30 Carport/Overhang onto outbuilding. * * *

(Kuczak 8/27/19 Aff. Ex. D.)

{¶ 11} On December 1, 2017, the Deckers signed a contract to purchase a commercial building on Springfield Street in St. Paris for $64,000.   (Kuczak 8/27/19 Aff. Ex. E.)   Terry stated that the entire amount was financed.   (Terry Depo. at 40.)

{¶ 12} In January or February 2018,[3] the Deckers opened A & T Auto Parts, located in the Springfield Street building.   (Terry Depo. at 12-13.)   Terry described the business as "an automotive resale" business.   He stated that "[i]t's the exact same type of business I was in with Mr. Gevedon."   (Terry Depo. at 12.)

{¶ 13} Gevedon stated in his affidavit that Terry never advised him that he (Terry) had an opportunity to establish, or an intention of establishing, an auto parts store in St. Paris or anywhere else that would compete with Wholesale Auto Parts.   (Gevedon Aff. ¶ 1.)

{¶ 14} Gevedon ousted Terry from Wholesale Auto Parts in mid-February 2018. (Gevedon Aff. ¶ 2-3.)   Immediately prior to the ouster, Gevedon began to receive calls from suppliers demanding payment for parts that Terry had ordered which were unaccounted for.   (Id. at ¶ 2.)   Almost immediately after the ouster, Gevedon learned that the Deckers were doing business as A & T Auto Parts.   (Id. at ¶ 3.)   Gevedon investigated A & T Auto Parts' website and found photographs showing the store to be

---

[3] Terry Decker stated during his deposition that the store opened in January 2018.   The vendor's license, however, was dated February 1, 2018.   (See Kuczak 8/27/19 Aff., Ex. F.)

"fully stocked with inventory two to three times in quantity and of like quality as that of many of the parts for which suppliers were demanding payment from [Gevedon]." (*Id.* at ¶ 4.)

{¶ 15} Emily Rabb, a certified public accountant, reviewed certain books and records kept by Wholesale Auto Parts. She identified annual discrepancies between the record parts sales revenue and bank deposits, and concluded:

16. Based on her training and experience and her review of the bank statements in which the operating expenses of Wholesale Auto Parts were recorded, her review of the business records of Wholesale Auto Parts, her interviews with employees of Wholesale Auto Parts, her review of the deposition of Terry Decker, and the Hilltop Auto Parts account, affiant is able to conclude to a reasonable accountancy certainty that between January 1, 2014 and January 31, 2018, the sum of $231,257 for which account cannot be made was the direct and proximate consequence of pilferage by the party who had control of the cash and deposits of sales revenue to the Wholesale Auto Parts bank account; defendant Terry Decker.

17. Affiant's conclusion that Terry Decker had pilfered $231,257 from the funds generated by sales of parts between January 1, 2014 and January 31, 2018 is confirmed by noting the gross discrepancy between parts sales revenue and bank deposits for calendar years 2014 through 2017 averaged $56,794 per annum. In 2018, when defendant Terry Decker left Wholesale in February, the discrepancy between sales of parts and bank deposits was

$8,904, some of which accumulated under Terry Decker's stewardship. (Rabb Aff. at ¶ 16-17.) Rabb tempered her conclusions during her deposition, and she denied calling Terry Decker a "thief." Terry also contested Rabb's conclusions, stating in an affidavit that Rabb had failed to account for significant cash expenditures for the business. (*See* Terry 9/4/19 Aff.)

{¶ 16} The evidence regarding Andrea was significantly more limited. Terry stated in his affidavit that at no point in time, either before or after their marriage, did he ever "involve her, employ her, or use her in furtherance of the business of Wholesale Auto Parts." (Terry 8/2/19 Aff. at ¶ 11.) Andrea's affidavit stated that her husband operated Wholesale Auto Parts with Gevedon, but "at no point [in] time did she ever work, assist, volunteer, or otherwise perform any duties affiliated to her husband's operation of the business; including receiving or making deposits involving Wholesale Auto Parts." (Andrea Aff. at ¶ 3.) Andrea's affidavit further stated that she was an active duty service member with the United States Air Force between 1995 and 2016; since her retirement, she had been employed full-time as a civilian employee of the Air Force. (*Id.* at ¶ 4-5.) Andrea stated that she had "not had any involvement in any outside business interests." (*Id.* at ¶ 5.)

{¶ 17} On May 17, 2018, Gevedon brought suit against the Deckers, dba A & T Auto Parts, alleging that Terry, as manager for Wholesale Auto Parts, purchased inventory ostensibly for Wholesale Auto Parts, but sold it and applied the proceeds to his and Andrea's benefit.[4] Terry also allegedly failed to pay for that inventory and deceived

---

[4] Gevedon originally filed the lawsuit in the Montgomery County Court of Common Pleas. In August 2018, the case was transferred to the Clark County Court of Common Pleas.

Gevedon by returning other merchandise to their suppliers for credit. Gevedon alleged that Terry "purloined" $282,482 of Wholesale Auto Part's cash and receipts through this scheme and that the Deckers conspired to conceal the conversion by purchasing a building and inventory for their competing store and by purchasing and improving a personal residence. Gevedon asserted a claim of breach of fiduciary duty against Terry and claims of fraudulent conversion and civil conspiracy against Terry and Andrea.

{¶ 18} The Deckers filed counterclaims against Gevedon, alleging that Gevedon and Terry had entered into an oral partnership agreement in April 2009, and that Gevedon had failed to share the profits, that Gevedon retained capital provided by Terry, and that Gevedon defamed the Deckers by telling employees, customers, and others that the Deckers had embezzled from him. Terry Decker brought claims for breach of a partnership agreement, unjust enrichment, defamation, and violation of the Fair Labor Standards Act. The Deckers further claimed that Gevedon's action was a frivolous lawsuit.

{¶ 19} On July 26, 2019, Gevedon filed a motion for summary judgment on his claims against Terry Decker for breach of fiduciary duty and fraudulent conversion and on the Deckers' counterclaims. He supported his motion with Terry's deposition and an affidavit from CPA Emily Rabb. The Deckers opposed the motion with supporting documentation.

{¶ 20} On August 6, 2019, the Deckers filed a motion for partial summary judgment on their counterclaims for violation of the Fair Labor Standards Act and frivolous conduct, Gevedon's claim for civil conspiracy, and on all claims against Andrea Decker. With respect to Gevedon's claims against Andrea, the Deckers first argued that the complaint

failed to state claims of conversion and civil conspiracy. They argued that there were no allegations that Andrea did anything wrong or otherwise interfered with Gevedon's property rights, thus precluding a claim of conversion. In addition, they claimed that there were no allegations that Andrea was involved in an underlying tort, and thus no conspiracy existed. They further argued that their affidavits demonstrated that no genuine issue of material facts existed as to these claims. The crux of their argument as to Andrea was stated in another portion of their motion: "Here, it is clear that there was absolutely no basis to include Andrea Decker, an innocent spouse of Terry Decker[,] in whatever business dispute Plaintiff had with the Defendant."

{¶ 21} Gevedon opposed the Deckers' partial summary judgment motion, supported by an affidavit by Gevedon and Gevedon's counsel. Counsel's affidavit authenticated several exhibits related to the Deckers' financial transactions.

{¶ 22} The trial court granted in part and denied in part the cross-motions for summary judgment. The court found that genuine issues of material fact existed, precluding summary judgment in favor of either party on Gevedon's claims against Terry Decker and on the counterclaims. The court noted that "[e]ach claim is, in some way, contingent on a jury's conclusion regarding whether or not Mr. Decker misappropriated/converted/stole/pilfered/purloined funds from Wholesale Auto Parts."

{¶ 23} The court reached a different conclusion, however, as to the claims against Andrea Decker. It found that no genuine issues of material fact existed and that she was entitled to judgment on Gevedon's claims as a matter of law. The court reasoned:

> The only "evidence" presented is that Ms. Decker is Mr. Decker's spouse,
>
> they bought a modest home together and did unspecified repairs to the

home. No reasonable juror could conclude Ms. Decker is liable to Mr. Gevedon. Jurors are specifically instructed not to resort to speculation and conjecture, and such speculation and conjecture would be a necessary precursor to finding Ms. Decker liable under Mr. Gevedon's claims.

The court later determined, pursuant to Civ.R. 54(B), that there was "no just cause for delay" as to its grant of summary judgment in favor of Andrea, making that decision immediately appealable.

{¶ 24} Gevedon appeals from the trial court's judgment in favor of Andrea, claiming that the trial court erred in granting summary judgment to her.

## II. Summary Judgment Standard

{¶ 25} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 26} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits

or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Dresher* at 293. Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 27} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine all the Civ.R. 56 evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond*, 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

### III. Fraudulent Conversion

{¶ 28} Gevedon claims that there were genuine issues of material fact as to whether Andrea fraudulently converted the partnership's property. Specifically, Gevedon claims that Terry and Andrea misappropriated capital and inventory from Wholesale Auto Parts to found their competing business, A & T Auto Parts, and to purchase and renovate their home.

{¶ 29} "Conversion is an exercise of dominion or control wrongfully exerted over property in denial of or under a claim inconsistent with the rights of another." *Dice v. White Family Cos.*, 173 Ohio App.3d 472, 2007-Ohio-5755, 878 N.E.2d 1105, ¶ 17 (2d Dist.); *Moyer v. Abbey Credit Union, Inc.*, 2d Dist. Montgomery No. 28759, 2020-Ohio-5410, ¶ 50. "Typically, '[t]he elements of a conversion cause of action are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.' " *Dice* at ¶ 17, quoting *Haul Transport of VA, Inc. v. Morgan*, 2d Dist.

Montgomery No. 14859, 1995 WL 328995 (June 2, 1995); *Hillier v. Fifth Third Bank*, 2020-Ohio-3679, 154 N.E.3d 1266, ¶ 68 (2d Dist.).

**{¶ 30}** Conversion is an intentional tort. *Cent. Ohio Med. Textiles v. PSC Metals, Inc.*, 10th Dist. Franklin No. 19AP-167, 2020-Ohio-591, ¶ 25. "While conversion does not require a showing of wrongful intent to interfere with the owner's property rights, a plaintiff must demonstrate that the defendant intentionally exercised dominion or control over the property." *Id.* When a person intentionally exercises dominion or control over the plaintiff's property, the defendant is liable for conversion even if he or she is acting under a misapprehension or mistake. *Vienna Beauty Prods. Co. v. Cook*, 2015-Ohio-5017, 53 N.E.3d 808, ¶ 12 (2d Dist.), citing *Gordon v. Morris*, 2d Dist. Greene No. 2000-CA-69, 2001 WL 85797, *4 (Feb. 2, 2001).

**{¶ 31}** We find *Vienna Beauty Prods. Co v. Cook*, which involved a wife's embezzlement of funds from one company and her use of those embezzled funds for the benefit of her husband and his company, to be instructive. In that case, Mrs. Cook stole checks from her employer, Vienna, and deposited those checks into the bank account for Accurate Construction Equipment Repair, LLC ("ACER"), her husband's company. Mrs. Cook was the managing agent for ACER. Vienna brought suit against the Cooks and ACER on claims of conversion and civil conspiracy. The trial court granted summary judgment to Vienna and against ACER and Mrs. Cook on the conversion claim, but the matter went to trial against Mr. Cook. At trial, the court granted a directed verdict in Mr. Cook's favor.

**{¶ 32}** On appeal, we affirmed the trial court's directed verdict for Mr. Cook. We noted first that there was no evidence at trial that Mr. Cook, himself, ever intentionally

exercised dominion or control over the checks Mrs. Cook stole from Vienna. We summarized our reasoning, stating:

> In short, the record supports a determination that Mrs. Cook, acting without Mr. Cook's knowledge, stole checks from Vienna, deposited the checks in ACER's business account, and then withdrew money to pay various expenses. On these facts, Vienna failed to prove, by the preponderance of the evidence, that Mr. Cook had knowledge of his wife's actions, that he personally exercised dominion or control over Vienna's checks or the proceeds therefrom, or that he otherwise participated in her conversion. Although Mrs. Cook placed the stolen checks into a business account over which both Cooks had authority, the record supports a finding that Mr. Cook did not intentionally exercise dominion or control over the converted funds. Indeed, we fail to see how Mr. Cook intentionally could have exercised dominion or control over something he did not know existed. Therefore, with respect to Mr. Cook, Vienna failed to establish the elements of a conversion claim.

*Vienna Beauty Prods.* at ¶ 15.

{¶ 33} We expressly rejected Vienna's argument that Mr. Cook was liable for conversion simply because he "benefitted" from Mrs. Cook's theft of the checks. *Id.* at ¶ 16. We noted that at least one Ohio appellate district correctly has recognized that "benefit is not an element" of a conversion claim. *Id.*, citing *Keybank Natl. Assoc. v. Guarnieri & Secrest, PLL*, 7th Dist. Columbiana No. 07 CO 46, 2008-Ohio-6362, ¶ 16. We concluded that whether Mr. Cook merely "benefitted" from his wife's misconduct was

"irrelevant" to Vienna's conversion claim, particularly when there was no evidence that he even knew about her theft of the checks. *Id.*

{¶ 34} *Vienna Beauty Prods.* also addressed Mr. Cook's liability for conversion based on his status as owner of ACER. We stated that ACER, the company, could be liable for acts done by Mrs. Cook while acting as her husband's bookkeeper, but Mr. Cook could not be held personally liable for his wife's conversion merely based on his status as ACER's sole shareholder. *Vienna Beauty Prods.* at ¶ 19. In this respect, *Vienna Beauty Prods.* is distinguishable from the case before us, as ACER was a limited liability corporation and A & T Auto Parts is a partnership. *See* 1st Amended Answer, ¶ 1 (admitting that Andrea was a partner/co-owner of A & T Auto Parts).

{¶ 35} Turning to the circumstances before us, we agree with the trial court as to certain aspects of Gevedon's conversion claim against Andrea Decker. The undisputed evidence reflects that Andrea had no involvement with Wholesale Auto Parts and that she did not personally "pilfer" any monies, inventory, or other assets of Wholesale Auto Parts. Even construing the evidence in Gevedon's favor and assuming that Terry stole assets from Wholesale Auto Parts, the record contains no information about where the alleged converted funds were deposited, who controlled the account(s), and who accessed that money.

{¶ 36} More specifically, there was no evidence that Andrea was aware of any conversion of funds or how any of those funds were used. With respect to the Deckers' home, the record indicates that the Deckers financed nearly the entire cost of the home, and they later took out a $27,700 home equity loan on the property. Even if converted funds were used to pay for the renovations, there was no evidence that Andrea knew

about it. The same was true with respect to the Deckers' purchase of the Springfield Street building and inventory for A & T Auto Parts.

{¶ 37} In granting summary judgment to Andrea, the trial court referred to Andrea as "Mr. Decker's spouse." However, Andrea was not only Terry's spouse; she was a partner in A & T Auto Parts. Indeed, the caption of Gevedon's complaint lists both Terry and Andrea as "dba A & T Auto Parts." Accordingly, we must review Gevedon's conversion claim against Andrea in light of both statuses.

{¶ 38} To the extent that Gevedon claims that Andrea converted Wholesale Auto Parts capital through the purchase and renovation of the Deckers' personal residence, we are concerned only with Andrea as Terry's spouse. Again, there was no evidence that Andrea had any knowledge of Terry's alleged tortious conduct, that she personally exercised dominion or control over Wholesale Auto Parts' property, or that she otherwise participated in the alleged conversion. Under these circumstances, the fact that Andrea may have benefited from that conduct through the purchase of a home and improvements to the residence was irrelevant. The trial court properly granted summary judgment to Andrea to the extent that Gevedon alleged that she converted Wholesale Auto Parts' property through the purchase of a home and improvements to the residence.

{¶ 39} Gevedon further asserts that Terry "pilfered" money and inventory from Wholesale Auto Sales and used those assets to create A & T Auto Parts. Terry testified at his deposition that A &T Auto Parts was a business started by him and his wife, and they admitted in their answer that Andrea was a "partner/co-owner" of A & T Auto Parts. Although Andrea stated in her affidavit that she had "not had any involvement in any outside business interests," we must accept for purposes of this appeal that Andrea was

a partner in A & T Auto Parts.

{¶ 40} Under the Uniform Partnership Act, "any association of two or more persons to carry on as co-owners a business for-profit forms a partnership, whether or not the persons intend to form a partnership." R.C. 1776.22(A); R.C. 1776.01(M). A partnership "is liable for loss or injury caused to a person or for a penalty incurred *as a result of a wrongful act or omission, or other actionable conduct*, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership." (Emphasis added.) R.C. 1776.35(A). In addition, subject to certain exceptions that are not applicable here, "all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law." R.C. 1776.36(A).

{¶ 41} To the extent that Terry converted property of Wholesale Auto Parts as a partner of A & T Auto Parts and for the benefit of that new business, Andrea may be subject to liability for the conversion as another partner of A & T Auto Parts. Accordingly, the trial court erred in granting summary judgment to Andrea Decker to the limited extent that there was evidence that Terry Decker converted Wholesale Auto Parts' property as a partner of A & T Auto Parts.

### IV. Civil Conspiracy

{¶ 42} Gevedon claims that there are genuine issues of material fact as to whether Terry breached his fiduciary duty to Gevedon and whether Andrea conspired in that breach.

{¶ 43} "The tort of civil conspiracy has been defined as 'a malicious combination of two or more persons to injure another in person or property, in a way not competent

for one alone, resulting in actual damages.' " *Rachlow v. Dee*, 2d Dist. Montgomery No. 18927, 2002 WL 91288, * 3 (Jan. 25, 2002), quoting *LeFort v. Century 21–Maitland Realty Co.*, 32 Ohio St.3d 121, 126, 512 N.E.2d 640 (1987). To act "maliciously," the individuals involved must commit the wrongful act "purposely, without a reasonable or lawful excuse, to the injury of another." (Citation omitted.) *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1983); *Berridge v. McNamee*, 2016-Ohio-4716, 66 N.E.3d 1266, ¶ 40 (2d Dist.). "An underlying unlawful act or tort is required before a party can prevail on a civil conspiracy claim." *Rachlow* at *3, citing *Gosden v. Louis*, 116 Ohio App.3d 195, 219, 687 N.E.2d 481 (9th Dist.1996).

{¶ 44} "In a conspiracy, the acts of coconspirators are attributable to each other." *Williams* at 476, citing Prosser & Keeton on Torts (5 Ed.1984) 323, Section 46 ("All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's act done for their benefit, are equally liable." [Footnotes omitted.]). Accordingly, it is not required that each co-conspirator actively engage in the underlying tort.

{¶ 45} "A partner's duty of loyalty to the partnership and the other partners includes a duty to refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership." 13 Ohio Jurisprudence 3d, Business Relationships § 1150; *Leigh v. Crescent Square, Ltd.*, 80 Ohio App.3d 231, 237, 608 N.E.2d 1166 (2d Dist.1992). "Usurpation of business opportunities, conflict-of-interest transactions, and self-dealing are all breaches of fiduciary duty." *Meehan v. Mardis*, 2019-Ohio-4075, 146 N.E.3d 1266, ¶ 9 (1st Dist.).

{¶ 46} Gevedon argues that Terry misappropriated an opportunity for Wholesale Auto Parts to open an additional store, Andrea conspired with Terry to do so, and thus the Deckers tortiously conspired to breach Terry's fiduciary duty to Gevedon by competing with Wholesale Auto Parts.   The Deckers respond that Gevedon's complaint did not allege a civil conspiracy claim against them based on a breach of fiduciary duty. They argue, citing paragraph 6 of the complaint, that Gevedon only alleged that they conspired to convert Wholesale Auto Parts' property.

{¶ 47} Gevedon's complaint alleged the following operative facts:

5.   Plaintiff states that in his capacity as manager of Wholesale Auto Parts, Defendant Terry Decker served in a fiduciary capacity to Plaintiff having control over all inventory, supplies, and cash of Wholesale Auto Parts.

6.   With the intent to deceive Plaintiff, Terry Decker procured inventory to sell directly from Genuine Auto Parts * * * and IEH Uni-Select USA * * * to 'retail['] customers of Wholesale Auto Parts, converting the cash and receipts from such 'retail' sales directly to his own benefit and to the benefit of Andrea Decker, charging the cost of said newly procured inventory to Wholesale Auto Parts.

7. Instead of paying Genuine Auto Parts and IEU Uni-Select USA for inventory sold directly to 'retail' customers, Terry Decker returned previously paid for by Wholesale Auto Parts from previously-purchased, paid-for off-the-shelf inventory to Genuine Auto Parts * * * and IEU Uni-Select USA * * * for credit and thus deceived Plaintiff into believing that the suppliers of inventory sold directly at 'retail' to customers of Wholesale Auto Parts being

paid for out of the receipts for sail sales, not be returned inventory. [Errors sic.]

8. Plaintiff further states that in the calendars years of 2013 through 2017, Defendant Terry Decker purloined $282,482 of the cash and receipts of Wholesale Auto Parts by implementing the scheme described in ¶6 and ¶7 herein and conspired with Defendant Andrea Decker to further conceal said conversion by purchasing the building located at 116 S. Springfield Street in St. Paris, Ohio, stocking the Auto Parts Store located at that address and by purchasing and improving [their] residence * * * with said converted funds.

Paragraphs 9 through 11 further alleged that Terry's acts caused Gevedon to be indebted to his suppliers in the amount of $73,000, and that Terry wrote a check in the amount of $3,350 for which Wholesale Auto Parts had insufficient funds.

{¶ 48} In the "Claims for Relief" portion of the complaint, Gevedon alleged that the acts described in paragraphs six and seven constituted a breach of Terry's fiduciary duty to Gevedon, fraudulent conversion to the benefit of Terry and Andrea, and a civil conspiracy between Terry and Andrea. A liberal reading of the complaint supports allegations that Terry converted Wholesale Auto Parts property, that the property was then sold directly to retail customers of Wholesale Auto Parts (i.e., through a competing store, which breached Terry's fiduciary duty to Gevedon), and that Andrea conspired with Terry to commit these acts. We thus disagree with the Deckers that Gevedon never raised a conspiracy claim against them based on Terry's alleged breach of fiduciary duty.

{¶ 49} However, upon review of that claim, the trial court properly granted

summary judgment to Andrea on Gevedon's civil conspiracy claim based on a breach of fiduciary duty. Construing the evidence in Gevedon's favor, the Deckers opened a store (A &T Auto Parts) that sells the same type of products as Wholesale Auto Parts. Terry, a partner in Wholesale Auto Parts, did not inform Gevedon of his (Terry's) intention to open a competing store or discuss the business opportunity with Gevedon.

{¶ 50} Even assuming that such actions constituted a breach of fiduciary duty by Terry, there was no evidence that Andrea acted "maliciously" when she created A & T Auto Parts with her husband. Indeed, the record contains virtually no information about the creation of A & T Auto Parts. Although Andrea and Terry jointly purchased the commercial building from which A & T Auto Parts operates, there is no evidence demonstrating Andrea's involvement with the store, and her affidavit expressly stated that she had no involvement with any business interests outside of her employment. There also was no evidence that Andrea had any knowledge of the workings of Wholesale Auto Parts and that the opening of A & T Auto Parts potentially constituted a breach of fiduciary duty by Terry. Andrea herself could have opened a competing business, as she had no fiduciary duty to Gevedon. In short, there was no evidence that Andrea "conspired" with Terry to breach his fiduciary duty to Gevedon. The facts that Andrea was a partner in A & T Auto Parts and co-owned the property from which it operated, without more, did not create a genuine issue of material fact regarding whether Andrea acted with the requisite malicious intent.

{¶ 51} We have concluded, above, that genuine issues of material fact precluded summary judgment in favor of Andrea on Gevedon's conversion claim to the extent that there was evidence that Terry converted Wholesale Auto Parts property as a partner (with

Andrea) of A & T Auto Parts and on behalf of that business. We nevertheless conclude that the alleged conversion claim cannot constitute the underlying tort for the civil conspiracy claim against Andrea. Gevedon has not presented any evidence that Andrea knew that Terry converted Wholesale Auto Part's property, nor has Gevedon presented any evidence that Andrea otherwise furthered, aided, encouraged, or adopted any of Terry's alleged wrongful acts.

{¶ 52} In summary, the trial court properly granted summary judgment to Andrea on Gevedon's claim of civil conspiracy in its entirety. The trial court also properly granted summary judgment to Andrea on Gevedon's conversion claim as it relates to property that Terry allegedly converted from Wholesale Auto Parts prior to the creation of Terry and Andrea's partnership regarding A & T Auto Parts. To the extent that Terry converted property of Wholesale Auto Parts as a partner for and on behalf of A & T Auto Sales, the trial court erred in granting summary judgment to Andrea on Gevedon's conversion claim.

## V. Conclusion

{¶ 53} The trial court's judgment will be affirmed in part and reversed in part, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Konrad Kuczak
Michael Sandner
Hon. Richard J. O'Neill